**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____
                                                    )
Yassin Muhiddin AREF, *et al.*,            )
                                                    )
                    Plaintiffs,               )
                                                    )
          v.                                        )          Case No. 1:10-cv-00539-RMU
                                                    )
Eric HOLDER, *et al.*,                       )
                                                    )
                    Defendants.            )
_____)


**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
<u>ON DANIEL McGOWAN'S RETALIATION CLAIM</u>**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................................ 1

STATEMENT OF FACTS .............................................................................................. 1

ARGUMENT ................................................................................................................. 3

      As Evidenced By His Detailed Grievances and the BOP's Responses,
      Daniel McGowan Thoroughly Exhausted His Retaliation Claim

CONCLUSION .............................................................................................................. 10

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Burton v. Jones*,
   321 F.3d 569 (6th Cir. 2003) ...................................................................4

*Daher v. Kasper*,
   No. 06-CV-092, 2008 U.S. Dist. LEXIS 15201 (N.D. Ind. Feb. 26, 2008)........................5, 10

*Doe v. Wooten*,
   No. 07-CV-2764, 2010 U.S. Dist. LEXIS 71651 (N.D. Ga. July 16, 2010)............................4

*El-Shaddai v. Wheeler*,
   No. Civ 06-1898, 2008 U.S. Dist. LEXIS 10272 (E.D. Cal. Feb. 12, 2008)...........................8

*Gray v. Salao*,
   No. C 10-3474, 2011 U.S. Dist. LEXIS 101711 (N.D. Cal. Sep. 9, 2011) ...........................8

*Griffin v. Arpaio*,
   557 F.3d 1117 (9th Cir. 2009) ............................................................4, 6, 7

*Johnson v. Testman*,
   380 F.3d 691 (2d Cir. 2004)..............................................................4, 6, 10

*Jones v. Bock*,
   549 U.S. 199 (2007)...........................................................................3

*Kikumura v. Osagie*,
   461 F.3d 1269 (10th Cir. 2006) .......................................................... 3 - 6, 10

*Mathis v. GEO Group, Inc*,
   No. 08-CT-21-D, 2011 U.S. Dist. LEXIS 77965 (E.D.N.C. July 18, 2011) ...........................4

*Norwood v. Robinson*,
   No. 10-16188, 2011 U.S. App. LEXIS 11847 (9th Cir. 2011) .................................7

*Olivares v. United States*,
   No. 07-CV-3476, 2010 U.S. Dist. LEXIS 133577 (D.N.J. Dec. 16, 2010)........................4, 5

*Rand v. Simonds*,
   422 F. Supp. 2d 318 (D.N.H. 2006)........................................................5

*Tennille v. Quintana*,
   No. 11-2682, 2011 U.S. App. LEXIS 18267 (3d Cir. 2011) ..................................7

## TABLE OF AUTHORITIES (cont.)

**Page(s)**

*Westefer v. Snyder,*
    422 F.3d 570 (7th Cir. 2005) ...................................................................................6

*Wilson v. MATA,*
    348 F. App'x 237 (9th Cir. 2009) ...........................................................................7

*Woodford v. Ngo,*
    548 U.S. 81 (2006)..............................................................................................8, 9

**STATUTES**

42 U.S.C. § 1997e(a)..............................................................................................................3

28 C.F.R. § 542.10 *et seq.*....................................................................................................3

**OTHER AUTHORITIES**

Fed. R. Civ. P. 15(d) ...........................................................................................................10

## PRELIMINARY STATEMENT

Defendants have moved for summary judgment on Daniel McGowan's retaliation claim, arguing that he failed to administratively grieve that issue with sufficient specificity.  Plaintiffs and Defendants concur on which administrative remedies are relevant, and Defendants seem to acknowledge that Mr. McGowan has pursued each required step in the administrative remedy process.  Thus, the only question before this Court is whether Mr. McGowan's objections to the propriety and constitutionality of his CMU designation were sufficiently detailed.

## STATEMENT OF FACTS

Among other claims, Mr. McGowan has alleged that Defendants designated him to the Communications Management Unit ("CMU") in retaliation for his protected First Amendment activity.  *See* Complaint ¶ 273.  Mr. McGowan is a low security prisoner; his disciplinary record is completely clean; his security point level, already low, has continued to drop due to his good conduct; he had no communications-related offenses prior to his CMU designation, and has earned none since; and he has consistently received positive program reviews.  *Id*. ¶¶ 154, 156-57, 159.  He has, in other words, been a model prisoner.  But he has also advocated for progressive causes and the rights of political prisoners since his arrest, and communicated with law-abiding social justice activists from prison.  *Id*. ¶ 167.  In August 2008, he was abruptly designated to the CMU.  *Id*. ¶ 160.  Mr. McGowan has alleged that his CMU designation is in retaliation for this protected activity.

In support of that claim, Mr. McGowan has also alleged that the Bureau of Prisons' ("BOP") official explanation for his CMU designation is, in large part, demonstrably false.  *Id*. ¶ 161.  His Notice of Transfer to the CMU states that he destroyed an energy facility, is "a member and leader in the Earth Liberation Front ("ELF") and Animal Liberation Front ("ALF"),

groups considered domestic terrorist organizations," and taught others how to commit crimes of arson. *Id.* ¶¶ 160, 161. Mr. McGowan sharply disputes the accuracy of these claims. *Id.* ¶¶ 161-163. The BOP has been unresponsive to Mr. McGowan's attempts to correct his record, and he has received no further information explaining his designation. *Id.* ¶ 164. In March 2011, this Court ruled that, in light of those allegations, Mr. McGowan pleaded a plausible retaliation claim. *See* Memorandum Opinion at 30-32 (Docket #37).

Before filing the instant lawsuit, Mr. McGowan used the BOP's administrative grievance system to challenge his designation to the CMU and to dispute the veracity of the BOP's stated explanation for the designation. In Administrative Remedy #508242, Mr. McGowan alleged, "my placement in the [CMU] violates my constitutional rights," and requested that he "be transferred to a low-security prison." Exhibit B to Defendants' Declaration of Bruce Plumley, Docket # 47-2 (hereafter "Defendants' Ex.") at 34. In response, the BOP stated that Mr. McGowan's designation was "deemed necessary due to [his] current offense" and because he is "a member and leader of groups which are considered domestic terrorist organizations." *Id.* at 38. The BOP concluded: "your placement in the CMU is deemed appropriate, and further transfer is not warranted." *Id.* The BOP further asserted that Mr. McGowan's designation was due to information "outlined" in his Presentence Investigation Report ("PSR").[1] *Id.* at 40.

In Administrative Remedy #509775, Mr. McGowan further alleged that the official reasons supplied by the BOP to explain his CMU designation were factually inaccurate. *See* Defendants' Ex. C at 42, 44, 47. He requested evidence of these allegations, their removal from his Notice of Transfer, and an immediate transfer to general population. *Id.* The BOP rejected his claim that the reasons were inaccurate, insisting that they appeared in his PSR. *Id.* at 45, 48.

---

[1] Mr. McGowan's PSR in fact includes no statement that he ever taught others how to commit arson, and specifically indicates that there is no evidence he was a leader of either the ELF or the ALF. *See* Complaint ¶ 163.

The BOP also indicated that his claim that he was "inappropriately housed in the CMU" was "repetitive of Administrative Remedy 508242" and refused to respond to the request.  *Id*. at 45.

Defendants have not suggested that Mr. McGowan failed to fully exhaust the administrative grievance process; indeed, Defendants submitted paperwork confirming that Mr. McGowan pursued his grievances all the way up to the Central level.[2]  *See* Defendants' Exs. B and C.  Mr. McGowan did not receive the assistance of counsel regarding potential claims or language he should include in either grievance #508242 or grievance #509775.  *See* Declaration of Daniel McGowan ¶ 3, appended hereto as Plaintiffs' Exhibit 1 (hereafter "McGowan Decl.").

## ARGUMENT

## AS EVIDENCED BY HIS DETAILED GRIEVANCES AND THE BOP'S RESPONSES, DANIEL MCGOWAN THOROUGHLY EXHAUSTED HIS RETALIATION CLAIM.

The Prison Litigation Reform Act ("PLRA") requires a prisoner to exhaust administrative remedies before filing a lawsuit regarding prison conditions.  *See* 42 U.S.C. § 1997e(a).  The level of detail necessary in a grievance varies "from system to system and claim to claim [and it is] the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."  *Jones v. Bock*, 549 U.S. 199, 218 (2007).  However, the Code of Federal Regulations ("CFR"), which governs the BOP's administrative grievance program, is silent as to the degree of specificity required of a federal prisoner when drafting an administrative grievance.  *See* 28 C.F.R. § 542.10 *et seq.*; *see also Kikumura v. Osagie*, 461 F.3d 1269, 1282-84 (10th Cir.

---

[2]  Mr. McGowan has continued to fully grieve the propriety of his designation to the CMU since filing the instant lawsuit.  In Administrative Remedy #586371, first filed in April 2010, Mr. McGowan requested a hearing so that he could "contest the claims made to send/keep me here."  Defendants' Ex. D at 50.  He insisted on "a specific reason for why I am being kept here at the CMU," and again requested transfer "to a prison suitable for my security level" and restoration of "full communication privileges."  *Id*. at 53, 55. In response, the BOP indicated that Mr. McGowan had been designated to the CMU "based on [his] current offense behavior or [his] continued behavior while incarcerated."  *Id*. at 51.  It asserted that a "recent review of your status determined you still require the security and supervision afforded by the CMU and you are deemed to be appropriately classified at this time."  *Id*. at 54.

2006) ("the regulations governing the BOP's administrative remedy program do not specify the kind of information needed in a grievance").

Where the administrative rulebook is silent, federal courts have followed the Seventh Circuit's decision in *Strong v. David*, holding that a "grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought. As in a notice-pleading system, the grievant need not lay out the facts, articulate legal theories, or demand particular relief. All the grievance need do is object intelligibly to some asserted shortcoming." 297 F.3d 646, 650 (7th Cir. 2002). While neither the D.C. Circuit nor the District has explicitly adopted that standard (or any other standard), there has been widespread agreement in the rest of the Circuits to follow *Strong*. *See, e.g., Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009) (adopting the *Strong* standard and noting that "a grievance need not include legal terminology or legal theories . . . [nor] contain every fact necessary to prove each element of an eventual legal claim"); *Kikumura*, 461 F.3d at 1283 (adopting the *Strong* standard and stating that "a grievance will satisfy the exhaustion requirement so long as it is not 'so vague as to preclude prison officials from taking appropriate measures to resolve the complaint internally'") (citation omitted); *Johnson v. Testman*, 380 F.3d 691, 697 (2d Cir. 2004) (adopting the *Strong* standard and noting that "[u]ncounselled inmates navigating prison administrative procedures without assistance cannot be expected to satisfy a standard more stringent than that of notice pleading"); *Burton v. Jones*, 321 F.3d 569 (6th Cir. 2003) (adopting the *Strong* standard). *See also Mathis v. GEO Group, Inc*, No. 08-CT-21-D, 2011 U.S. Dist. LEXIS 77965, at *18-22 (E.D.N.C. July 18, 2011) (applying *Strong*'s notice pleading standard where Circuit has not spoken); *Doe v. Wooten*, No. 07-CV-2764, 2010 U.S. Dist. LEXIS 71651, at *6-7 (N.D. Ga. July 16, 2010) (same); *Olivares v. United States*, No. 07-

CV-3476, 2010 U.S. Dist. LEXIS 133577 (D.N.J. Dec. 16, 2010) (same); *Rand v. Simonds*, 422 F. Supp. 2d 318, 328 (D.N.H. 2006) (same).

Courts are particularly sensitive to the *pro se* nature of most prisoners' administrative grievances. A liberal pleading standard is appropriate in the administrative grievance context because "[n]ot only do inmates typically file their grievances pro se, but BOP procedures allow prisoners just twenty days from the date of their injury to file a grievance; they are allowed less than a page and a half to write out a complaint; and, because they are incarcerated, the inmates cannot investigate their own claims to identify the alleged wrongdoers." *Kikumura*, 461 F.3d at 1284; *see also Daher v. Kasper*, No. 06-CV-092, 2008 U.S. Dist. LEXIS 15201, at *13 (N.D. Ind. Feb. 26, 2008) ("A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers") (citing *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)).

The grievances that Mr. McGowan submitted more than adequately suffice to exhaust his claim of retaliatory designation to the CMU, particularly when viewed in light of those liberal standards. Mr. McGowan repeatedly used the BOP's administrative grievance system to protest his designation to the CMU and the veracity of the "official" reasons supplied for that designation. He indicated that his designation occurred in violation of his constitutional rights, and requested a transfer to a low-security facility. *See* Defendants' Ex. B. He disputed the accuracy of the BOP's stated explanation for his designation to the CMU, requesting evidence of their claims and their removal from his Notice of Transfer, and again requested immediate transfer to general population. *See* Defendants' Ex. C.

Those grievances plainly alerted BOP officials "to the nature of the wrong for which redress [was] sought." *Strong*, 297 F.3d at 650. Mr. McGowan made it clear that he was

inappropriately and unconstitutionally sent to the CMU, that the purported reasons for that designation were factually erroneous, and that he wanted those errors corrected.  His grievances gave the BOP all it needed to look into the real reasons Mr. McGowan was designated to the CMU, and to take "appropriate measures to resolve the complaint internally" by transferring him back to general population.  *See Kikumura*, 461 F.3d at 1283 (citation omitted).  His allegations were entirely consistent with a notice pleading standard, particularly given that they were drafted without the assistance of counsel.  *See* McGowan Decl. ¶ 3; *Johnson*, 380 F.3d at 697.

Defendants complain that "none of the administrative remedy requests filed by [Mr.] McGowan contains an assertion that his 2008 transfer to the CMU was motivated by any retaliatory purpose on the part of the BOP."  *See* Defendants' Memorandum in Support of their Motion for Summary Judgment (hereafter "Defendants' Mem.") at 7.  They also assert that Mr. McGowan failed to include "any information regarding the speech or conduct that allegedly triggered BOP's retaliatory response."  *Id*. at 9.  But "a grievance need not include legal terminology or legal theories . . . [nor] contain every fact necessary to prove each element of an eventual legal claim."  *Griffin*, 557 F.3d at 1120.  All that is required is that the prisoner "articulate a specific deficiency and place the officials on notice of the area of concern."  *See Strong*, 297 F.3d at 650.  Mr. McGowan's grievances articulated such a deficiency and provided Defendants with adequate notice of his concerns.  He alerted BOP officials that his CMU designation was inappropriate, that the official reasons he had been given explaining that designation were faulty, and proffered a means of resolution by requesting transfer back to general population.  *See* Defendants' Exs. B and C.  In so doing, he exhausted the claim that his designation to the CMU was retaliatory in nature.  *See, e.g.*, *Westefer v. Snyder*, 422 F.3d 570, 581 (7th Cir. 2005) (prisoners administratively exhausted their claim that they were sent to a

high security prison unit in retaliation for filing lawsuits where those grievances simply "expressed concern about not being told the reason for [their] transfer[s] . . . or listed something to the effect of 'Transfer from [the unit]' as the requested remedy").

Defendants suggest that Mr. McGowan was also required to supply the BOP with legal terminology, the elements of complex constitutional legal theory, and the facts necessary to make out such a claim in a federal lawsuit. That is simply not the case. *See, e.g., Griffin*, 557 F.3d at 1120 ("the primary purpose of a grievance is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation").

Indeed, courts have repeatedly held that a retaliation claim is exhausted where a prisoner complains about a prison official's actions or a hardship, without specifically alleging that these actions or hardship were retaliatory in nature. Courts have so held both when a prisoner has not framed a grievance in terms of "retaliation," and when a prisoner has not explained what she believes she did to prompt the retaliatory conduct. *See, e.g., Norwood v. Robinson*, No. 10-16188, 2011 U.S. App. LEXIS 11847, at *2 (9th Cir. 2011) (prisoner's retaliation claim that his property was confiscated because he had filed grievances was administratively exhausted even when the prisoner "did not allege that retaliation was the reason for the confiscation"); *Tennille v. Quintana*, No. 11-2682, 2011 U.S. App. LEXIS 18267, at *5 (3d Cir. 2011) (prisoner's claim that he was denied eyeglasses in retaliation for filing a civil complaint was administratively exhausted where he grieved the denial of eyeglasses as being in violation of prison policy, but did not cite to the specific constitutional grounds on which his grievance was based); *Wilson v. MATA*, 348 F. App'x 237, 238 (9th Cir. 2009) (prisoner exhausted claim that he was denied legal materials in retaliation for filing grievances where his "grievance complaining about [prison official's] refusal to transport [the prisoner] to his legal materials gave the prison adequate notice

7

of the nature of the wrong [the prisoner] sought to be remedied – namely, [the prison official's] alleged refusal to provide [the prisoner] access to his legal materials"); *El-Shaddai v. Wheeler*, No. Civ 06-1898, 2008 U.S. Dist. LEXIS 10272, at *16 (E.D. Cal. Feb. 12, 2008) (prisoner's claim of a retaliatory attack by prison guards was exhausted where he complained that defendants "used force against him when they should not have.  Whether the motive was retaliatory and/or sadistic and malicious . . . are legal determinations to be made later in a civil action but are not conclusions that must [be] specified in a grievance form that does not call for such conclusions").  *See also Gray v. Salao*, No. C 10-3474, 2011 U.S. Dist. LEXIS 101711, at *12 (N.D. Cal. Sep. 9, 2011) ("While it is true that the word 'retaliate' was never in the grievance, the charge of a falsified and bogus field test was plainly suggested . . . .  This was enough to raise the question whether plaintiff was being retaliated against for something, if not specifically for having exercised First Amendment rights").

The fact that Mr. McGowan's grievances were adequate to "alert[] the prison to the nature of the wrong for which redress is sought," *Strong*, 297 F.3d at 650, is further illustrated by the BOP's responses to those grievances.  Defendants correctly point out that the "BOP must have 'an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court.'"  Defendants' Mem. at 9 (citing *Woodford v. Ngo*, 548 U.S. 81, 89 (2006)).  The BOP's responses to Mr. McGowan's grievances demonstrate that it understood perfectly what mistake he was asking them to correct, and it simply declined to do so.  In response to Administrative Remedy #508242, the BOP indicated that Mr. McGowan's designation was "deemed necessary," was "appropriate," and stated that "further transfer is not warranted."  Defendants' Ex. B at 38.  It also asserted that Mr. McGowan's designation was due to information in his PSR.  *Id*. at 40.  The BOP, in other words, stood by its assertion that Mr.

McGowan had been designated to the CMU for valid reasons, and refused to take the corrective action that Mr. McGowan requested.

In response to Administrative Remedy #509775, the BOP rejected Mr. McGowan's claim that the official reasons he was designated to the CMU were inaccurate, insisting again that they appeared in his PSR. *See* Defendants' Ex. C at 45. It also acknowledged its understanding of his allegations that he was "inappropriately housed in the CMU," but rejected them as "repetitive of Administrative Remedy 508242," and refused to respond to that request. *Id.* In other words, the BOP reasserted its position that Mr. McGowan was not designated to the CMU for unconstitutional reasons. The BOP, through these grievances, was given every "opportunity to correct its own mistakes with respect to the programs it administers," *Woodford*, 548 U.S. at 89, before the instant litigation was filed – and chose not to.

Importantly, the BOP's responses to these grievances are indistinguishable from its response to Mr. McGowan's subsequent grievance, administrative remedy #630732, when he explicitly used the word "retaliation" to describe his re-designation to the CMU in 2011. *Compare* Defendants' Ex. E, *with* Exs. B and C. When faced with an explicit reference to retaliation, the BOP provided an almost identical response as to his earlier grievances. *Id.* Thus, the BOP clearly had all the information it needed to investigate, and reject, Mr. McGowan's grievances from the start.[3]

---

[3] While not directly relevant to the question of exhaustion, it is notable that even after the lawsuit was filed, including a retaliation claim, the BOP rejected Mr. McGowan's request for an opportunity to contest the reasons cited in his Notice of Transfer for his CMU designation. In response to Administrative Remedy #586371, the BOP insisted that a "recent review of your status determined you still require the security and supervision afforded by the CMU and you are deemed to be *appropriately classified* at this time." Defendants' Ex. D at 54 (emphasis added). Yet again, the BOP plainly understood Mr. McGowan to be alleging that he was designated to the CMU for illicit reasons, but rejected his request to be transferred to general population on virtually identical grounds.

Finally, Mr. McGowan drafted Administrative Remedy #508242 and #509775 without the assistance of counsel.  Accordingly, he should benefit from the less stringent standard applied to the review of administrative exhaustion by *pro se* litigants.  *See Johnson*, 380 F.3d at 697 (noting that "[u]ncounseled inmates navigating prison administrative procedures without assistance cannot be expected to satisfy a standard more stringent than that of notice pleading"); *see also Kikumura*, 461 F.3d at 1284; *Daher*, 2008 U.S. Dist. LEXIS 15201, at *13.  Defendants suggest that Mr. McGowan has been able to articulate "sophisticated claims" in other grievances, specifically "pursuing a retaliation claim using the administrative remedy process" after his re-designation to the CMU in early 2011.  Defendants' Mem. at 8.  But that argument ignores the obvious fact that Mr. McGowan submitted that grievance with the benefit of the advice of undersigned counsel.  *See* McGowan Decl. ¶ 4.  By contrast, Mr. McGowan did not receive assistance of counsel either regarding potential claims or language he should include in either of the grievances he filed in 2008.  *See id.* ¶ 3.

In sum, Mr. McGowan thoroughly exhausted his available remedies with respect to his retaliation claim.  Moreover, Defendants apparently concede that Mr. McGowan has now fully grieved a claim of retaliation based on his recent re-designation to the CMU.  *See* Defendants' Mem. at 8.  Should the Court decide to grant Defendants' motion, Plaintiffs respectfully request the Court set a schedule for Mr. McGowan to decide whether he would like to seek permission to supplement the Complaint to include allegations of retaliation arising from Mr. McGowan's 2011 designation to the CMU.  *See* Fed. R. Civ. P. 15(d).

## CONCLUSION

For these reasons, Defendants' motion for summary judgment should be denied.

Dated: New York, NY
        September 28, 2011

Respectfully submitted,

By:   /s/ Alexis Agathocleous
           ALEXIS AGATHOCLEOUS, *pro hac vice*
           RACHEL MEEROPOL, *pro hac vice*
           SHAYANA D. KADIDAL
           (D.C. Bar No. 454248)

           CENTER FOR
           CONSTITUTIONAL RIGHTS
           666 Broadway, 7th Floor
           New York, NY 10012
           Tel: (212) 614-6478
           Fax: (212) 614-6499
           aagathocleous@ccrjustice.org

           GREGORY SILBERT
           KAVITA DESAI
           LARA E. VEBLEN
           ANDREY SPEKTOR
           WEIL, GOTSHAL & MANGES, LLP
           767 Fifth Avenue
           New York, NY 10153
           Tel: (212) 310-1000
           Fax: (212) 310-8007
           gregory.silbert@weil.com

           KENNETH A. KREUSCHER
           Portland Law Collective, LLP
           1130 SW Morrison Street, Suite 407
           Portland, OR 97205
           Tel: 503-228-1889
           Fax: 503-223-4518
           kenneth@portlandlawcollective.com

           *Attorneys for Plaintiffs*

11