## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

YASSIN MUHIDDIN AREF, et al.,

      Plaintiffs,

      v.

ERIC HOLDER, JR.,
Attorney General of the United States, et al.,

      Defendants.

Civil Action No. 10-0539
BJR/DAR

### MEMORANDUM OPINION AND ORDER

This matter was referred to the undersigned for resolution of discovery disputes, including the pending Motion to Compel Defendants to Remove Redactions, Produce Documents, and to File an Exhibit to a Supporting Declaration Under Seal (Document No. 65). Upon consideration of the Plaintiffs' motion and memorandum in support thereof, Defendants' opposition thereto, Plaintiffs' reply, the arguments of counsel at the hearing on the motion, and the entire record herein, Plaintiffs' motion to compel is granted in part, and denied in part.

## BACKGROUND

Because the previously assigned United States District Court Judge has documented the background of this case at length, *see* Memorandum Opinion (Document No. 37) at 2-9, the undersigned limits the following background to the facts relevant to the issues presently before the court.

Plaintiffs are federal prisoners who are or were incarcerated in specially designated Communication Management Units ("CMUs").  *Id.* at 1.  Their claims against Defendants arise

Aref, et al. v. Holder, et al.                                                                                    2

from their designation to CMUs.  *Id.*  Following the court's March 30, 2011 memorandum

opinion, ruling on Defendants' motion to dismiss, two claims[1] remain: Plaintiffs' claim that they

were placed and retained in CMUs without any meaningful process or review, *see id.* at 28, and

Plaintiffs Jones[2] and McGowan's[3] claims that their designation to the CMU was retaliatory, *see*

*id.* at 31-32.

      In response to the Plaintiffs' first request for production of documents, Defendants

produced redacted documents, claiming the redacted information was protected under the law

enforcement privilege.  Declaration of Alexis Agathocleous ("Agathocleous Declaration")

(Document No. 65-3) ¶¶ 2-3.  Plaintiffs objected to these redactions, with the exception of

redactions of inmates' security level designations.  *Id.* ¶ 3.  Defendants subsequently disclosed

some of the redacted information, after conferring with BOP and the Federal Bureau of

Investigation ("FBI").  *Id.* ¶¶ 4-5.  Plaintiffs are presently challenging certain redactions from the

documents that were produced.[4]  On May 25, 2012, Defendants provided an amended privilege

log, claiming both law enforcement privilege and deliberative process privilege over the

redactions at issue.  *See* Declaration of Nathan Swinton ("Swinton Declaration") (Document No.

---

[1] Prior to a ruling on the motion to compel, Plaintiffs filed a First Amended Complaint (Document No. 86). Since the motion was fully briefed prior to the filing of the amended complaint, the undersigned has not considered the amended complaint in resolving the motion to compel.

[2] While this matter was under advisement, counsel for Plaintiffs withdrew as counsel for Plaintiff Royal Jones.  *See* 9/29/2012 Minute Order; *see also* Motion to Withdraw as Counsel for Plaintiff Royal Jones and to File Supporting Declaration Under Seal (Document No. 52).

[3] Defendants have filed a Motion for Summary Judgment as to Plaintiff McGowan's retaliation claim. Defendants' Motion for Summary Judgment on Daniel McGowan's Retaliation Claim (Document No. 47).

[4] Plaintiffs are challenging redactions in the following bates-stamped documents: BOP CMU 005006; BOP CMU 005007; BOP CMU 005008; BOP CMU 00510; BOP CMU 005011; BOP CMU 005012; BOP CMU 005013; BOP CMU 005014; BOP CMU 005015; BOP CMU 005018; BOP CMU 005019; BOP CMU 005021; BOP CMU 005026; BOP CMU 005031; BOP CMU 3791; BOP CMU 3792.

69-3) ¶ 2; Swinton Declaration, Exhibit 1 (Amended Privilege Log).

The documents at issue are internal BOP memoranda and referral forms discussing

Plaintiffs' designation to, and retention at, the CMUs.  Specifically, the redacted documents

include a memorandum concerning Central Inmate Monitoring ("CIM") assignments, "CTU

Designation Memoranda[,] and [BPO North Central Regional Office] Referral Forms used in

evaluating whether Plaintiffs should be re-designated to the CMU."  Defendants' Memorandum

in Opposition to Plaintiffs' Motion to Compel Defendants to Remove Redactions and Produce

Documents ("Opposition") (Document No. 69) at 7.

A description of the process by which these documents were created follows, in order to

provide some context to the redactions challenged.  When recommending that an inmate be

designated to a CMU, the BOP Counter Terrorism Unit ("CTU") prepares a designation

memorandum for review by the North Central Regional Director.  Declaration of Leslie Smith

("Smith Declaration") (Document No. 69-1) ¶ 6.  The North Central Regional Director is the

BOP official that is "responsible for deciding whether CMU placement is appropriate . . . ."  *Id.*

These designation memoranda contain "relevant information about the inmate and include[] the

rationale for the CTU's recommendation."  *Id.*  CTU also prepares these designation memoranda

when reviewing the placement of an inmate already designated to a CMU.  *Id.*

The Regional Director and staff review the CTU's designation memorandum through a

multi-step process.  *See id.* ¶ 7.  First, the Correctional Programs Administrator generates a

summary referral form based on the information obtained from the CTU memorandum.  *Id.*

Next, the referral form is reviewed by the Psychology Services Administrator, the Correctional

Programs Administrator, the Correctional Services Administrator, the Regional Director's

Executive Assistant, and the Deputy Regional Director.  *Id.*  Each reviewer adds his or her

recommendation and supporting rationale to the form.  *Id.*  Finally, the referral form is reviewed

by the Regional Director, who decides whether designation to the CMU is warranted and

documents the rationale on the referral form.  *Id.* ¶ 8.

The National Joint Terrorism Task Force ("NJTTF") is compromised of representatives

of several agencies, including the FBI, and is responsible for "identifying and countering

terrorism-related activity inside prisons . . . ."  Declaration of Michael A. Clancy, Deputy

Assistant Director, Counterterrorism Division, Federal Bureau of Investigation[5] ("Clancy

Declaration") (Document No. 69-2) ¶¶ 7-9.  The NJTTF is also involved in the designation

process described above, although its involvement is "limited to recommending, where

appropriate, that an inmate be housed in a CMU."  *Id.* ¶ 11.  This generally occurs when an

inmate is "under investigation or connected to an investigation involving suspected terrorism-

related activity."  *Id.* ¶ 13.  In providing this recommendation, NJTTF shares information with

CTU.  *Id.* ¶ 9.  The information exchanged between NJTTF and BOP is "frequently derived from

FBI investigative files" and "may" indicate whether an inmate is under FBI investigation, or

provide NJTTF's opinion regarding where the inmate should be placed.  *Id.* ¶¶ 10-11.


**CONTENTIONS OF THE PARTIES**

Plaintiffs moved to compel Defendants to remove certain redactions from documents

obtained in discovery, arguing that the redactions do not fall under the scope of the law

enforcement privilege or the deliberative process privilege.  Memorandum of Law in Support of

---

[5] The court will limit citations to the Clancy Declaration, which was also submitted *ex parte* for *in camera* review, to the information that was also included in the version which was filed on the public record.

Plaintiffs' Motion to Compel Defendants to Remove Redactions and Produce Documents

("Plaintiffs' Memorandum") (Document No. 65) at 2-3; Reply Memorandum of Law in Support

of Plaintiffs' Motion to Compel Defendants to Remove Redactions and Produce Documents

("Reply") (Document No. 70) at 3-7.  Plaintiffs, in their evaluation of the factors relevant to an

assertion of the law enforcement privilege, contend that their interests are "substantial" because

the redacted information is "critical" to their allegations regarding their designation to CMUs.

Plaintiffs' Memorandum at 5-6.  Plaintiffs argue that disclosure is warranted since their

constitutional rights are at issue, there is no alternative documentation to show the reasons for

their designations in CMUs, and discovery has substantiated many of their allegations.  *Id.* at 6.

Balancing their interests against the Defendants' interests, Plaintiffs contend that there are no

ongoing criminal investigations that would be compromised by disclosure, and no "indication

that the redactions are protecting individuals or the integrity of a program."  *Id.*

  Defendants counter that the redactions are properly supported by the law enforcement

privilege.  Opposition at 13.  In support of their argument, Defendants contend that releasing the

redacted information has the potential to harm law enforcement interests by "inform[ing]"

Plaintiffs about whether they, or their associates, "have been subject to FBI surveillance."  *Id.* at

15.  Defendants further contend that the redacted information only has "minimal relevance" to

the Plaintiffs' claims, and that on balance, the relevant factors support withholding the

information.  Opposition at 16-18.

  With respect to the deliberative process privilege, Defendants contend that the redacted

documents, other than the CIM-related redactions in 3791, 3792, 5019, and 5026, "concern

communications between representatives on the [NJTTF] and BOP officials at the CTU."

Opposition at 9.  Defendants argue that the communications were predecisional discussions that occurred prior to final determinations regarding CMU placement, and were deliberative because they reflect NJTTF's recommendations and opinions.  Opposition at 11.

Plaintiffs counter that some of the information lost its predecisional status because the decision was adopted by the agency, and that some of the redacted information is not deliberative because it is "purely factual."  Reply at 4-5.  Further, Plaintiffs contend that their need sufficiently overcomes the Defendants' qualified privilege, because Defendants' concerns can be alleviated by designating the documents under the protective order governing this case.  Reply at 6-7.

In addition to their motion to compel removal of redactions, Plaintiffs seek to compel Defendants to produce documents, specifically, CMU referral and review forms for all current and former CMU prisoners.  Plaintiffs' Memorandum at 2.  In support of their request, Plaintiffs contend that the documents will illustrate the notice provided for inmates' CMU designations and the review that they received.  *Id.* at 7.  Plaintiffs argue that this information is relevant and important to their due process claim because the information could "expose the lack of meaningful review accorded to CMU prisoners."  *Id.* at 7-8.  Further, Plaintiffs argue that their request "easily outweighs" the Defendants' burden of production because the requested documents are "brief."  *Id.* at 8-9.

Defendants argue that the documents are not relevant to Plaintiffs' procedural due process claims because they would not "illuminate" whether the procedures applied to the Plaintiffs were adequate.  Opposition at 2.  Further, Defendants contend that any benefit of producing the documents is outweighed by the burden, due to the sensitive information

contained in the documents.  *Id.* at 25-26.  Defendants assert that the documents contain

information about inmates' convictions, financial resources, community or gang affiliations, and

law enforcement investigations.  Smith Declaration ¶¶ 12-16.   Defendants are concerned that

disclosure of this information "implicates the privacy interests" of the inmates, creates security

risks, threatens law enforcement deliberations, and would "place a substantial and undue burden

on BOP staff resources . . . ."  Opposition at 28.  Defendants maintain they would have to

conduct extensive privilege review, causing a burden which would outweigh any possible benefit

of production.  *Id.*

Plaintiffs, in reply, reiterate that the CMU referral and review forms are relevant to their

procedural due process claim because they are challenging the "entire [CMU] designation and

review process as meaningless and illusory."  Reply at 9.  Further, Plaintiffs argue that an

"Attorney's Eyes Only" designation would eliminate the risks of disclosure identified by

Defendants.  *Id.* at 11.

**APPLICABLE STANDARDS**

**I.  Assertion of Privilege**

An assertion of  the deliberative process privilege or the law enforcement privilege

requires: "(1) a formal claim of privilege by the 'head of the department' having control over the

requested information; (2) assertion of the privilege based on actual personal consideration by

that official; and (3) a detailed specification of the information for which the privilege is

claimed, with an explanation why it properly falls within the scope of the privilege."  *Landry v.

FDIC*, 204 F.3d 1125, 1135 (D.C. Cir. 2000) (citing *In re Sealed Case*, 856 F.2d 268, 271 (D.C.

Cir. 1988) and *Northrop Corp. v. McDonnell Douglas Corp.*, 751 F.2d 395, 399 (D.C. Cir.

1984)).

### *Law Enforcement Privilege*

The law enforcement privilege is a qualified privilege that protects documents "whose disclosure might reveal law enforcement investigative techniques or sources . . . ." *Tuite v. Henry*, 98 F.3d 1411, 1413 (D.C. Cir. 1996). "The party claiming privilege has the burden to establish its existence." *Friedman v. Bache Halsey Stuart Shields, Inc.*, 738 F.2d 1336, 1341-42 (D.C. Cir. 1984) (citations omitted). Because it is a qualified privilege, the court must balance the public interest in non-disclosure against the need of the particular litigant seeking the information. *In re Sealed Case*, 856 F.2d 268, 272 (D.C. Cir. 1988) (citation omitted). In balancing these interests, the court must consider the following factors:

> (1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information; (2) the impact upon persons who have given information of having their identities disclosed; (3) the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure; (4) whether the information sought is factual data or evaluative summary; (5) whether the party seeking discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question; (6) whether the police investigation has been completed; (7) whether any interdepartmental disciplinary proceedings have arisen or may arise from the investigation; (8) whether the plaintiff's suit is non-frivolous and brought in good faith; (9) whether the information sought is available through other discovery or from other sources: (10) the importance of the information sought to the plaintiff's case.

*Id.* (citation omitted).

### *Deliberative Process Privilege*[6]

---

[6] Defendants argue that Plaintiffs have waived objection to the assertion of the deliberative process privilege by not addressing it in their motion. Opposition at 9. While the law of this Circuit has held that issues may not be raised for the first time in a reply brief, *see Am. Wildlands v. Kempthorne*, 530 F.3d 991, 1001 (D.C. Cir. 2008) (citation omitted), this is done so that the opposing party "is ensured an opportunity to respond[,]" *compare*

The deliberative process privilege "allows the government to withhold documents and other materials that would reveal 'advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.'" *In re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1997) (citations omitted). "While the deliberative process privilege serves a number of related purposes, its 'ultimate aim' is to 'prevent injury to the quality of agency decisions.'" *Petroleum Info. Corp. v. U.S. Dep't of Interior*, 976 F.2d 1429, 1433-34 (D.C. Cir. 1992) (citing *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 151 (1975)) (discussing the privilege in the context of Freedom of Information Act exemption five).

In order to fall within the scope of this privilege, the information must be predecisional and deliberative. *In re Sealed Case*, 121 F.3d at 737. A document is predecisional if it was "generated before the adoption of an agency policy," and deliberative if it "reflects the give-and-take of the consultative process." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980) (considering an exemption under the Freedom of Information Act). A document that is predecisional can lose this status, "if it is adopted, formally or informally, as the agency position on an issue or is used by the agency in its dealings with the public." *Id.* "Factual material is not protected under the deliberative process privilege unless it is 'inextricably intertwined' with the deliberative material[.]" *Judicial Watch, Inc. v. Dep't of*

---

*Avia Dynamics, Inc. v. FAA*, 641 F.3d 515, 521 (D.C. Cir. 2011) (noting that the opposing party "thoroughly responded to the argument in its brief to [the] court"), *with Gen. Elec. Co. v. Jackson*, 610 F.3d 110, 123 (D.C. Cir. 2010) (finding that issues not raised until the reply brief were waived to prevent "sandbagging" where the opposing party was deprived of an opportunity to respond).

The court notes that it has had the opportunity to consider Defendants' arguments regarding the deliberative process privilege, both as outlined in their opposition to Plaintiff's motion to compel and at oral argument for this motion. It is further noted, that with the consent of Defendants, their Motion for Leave to File Surreply (Document No. 71) was denied as moot following oral argument. *See* 08/22/2012 Minute Order. The Defendants had an opportunity to respond to the Plaintiffs' argument that the deliberative process privilege does not apply. Accordingly, the court will consider the arguments of both sides in evaluating the merits of the deliberative process privilege.

*Justice*, 432 F.3d 366, 372 (D.C. Cir. 2005) (citing *In re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1997)).  Factual material is inextricably intertwined when disclosure would "inevitably reveal the government's deliberations." *In re Sealed Case*, 121 F.3d at 737 (citations omitted).

Because it is a qualified privilege, the deliberative process privilege "can be overcome by a sufficient showing of need." *Id.*  In making this determination, the court should balance factors such as "the relevance of the evidence, the availability of other evidence, the seriousness of the litigation, the role of the government, and the possibility of future timidity by government employees." *Id.* at 737-38 (citations and quotations omitted).

## II.  Relevance Standard

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . ."  Fed. R. Civ. P. 26(b)(1).  While relevance is construed broadly for discovery purposes, discovery is not allowed if the information has no "conceivable bearing" on the case. *Food Lion, Inc. v. United Food & Commercial Workers Int'l Union*, 103 F.3d 1007, 1012 (D.C. Cir. 1997) (citation omitted).

Even if the information sought is relevant, however, the court may limit discovery if it determines that "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues."  Fed. R. Civ. P. 26(b)(2)(C)(iii).  The court determines whether discovery will create an "undue burden" by evaluating factors such as "relevance, the need for the documents, the breadth of the document request, the time period covered by such request, the particularity with which the documents are described, and the burden imposed." *Moore v. Hartman*, 241 F.R.D.

59, 63 (D.D.C. 2007) (citation omitted)

## DISCUSSION

### I.  Redacted Documents[7]

Defendants, through the Deputy Assistant Director of the FBI Counterterrorism Division's Operations Branch II, claim the law enforcement privilege and deliberative process privilege with respect to redactions from the documents designated as BOP CMU 5006, 5007, 5008, 5010, 5011, 5012, 5013, 5014, 5015, 5018, and 5031.  *See* Clancy Declaration ¶ 5. Defendants also claim both privileges over the third redacted block[8] in documents 5019 and 5021.  *Id.* (indicating that the FBI was only asserting privilege over the second redaction identified by Plaintiffs in BOP CMU 5019 and 5021).  Defendants, through the Chief of the Counter Terrorism Unit for BOP, assert that they are withholding redactions in BOP 3791, 3792, 5019, and 5026 because the "information redacted is entirely CIMs-related information."  Smith Declaration ¶ 20.

The court first notes that there is a discrepancy regarding BOP CMU 5019.  The FBI asserts that the second redaction identified by Plaintiffs, which is the third redacted block in the document, is privileged information "reflecting communications between BOP and representatives of an FBI task force addressing terrorism."  Clancy Declaration ¶ 5.  BOP, however, asserts that the information it redacted from BOP CMU 5019 is "entirely CIMs-related

---

[7] The court is satisfied that the information provided in the declarations and the amended privilege log submitted by the Defendants is sufficiently detailed to allow the court to make its determination regarding the remaining redactions.  Although Plaintiffs request that the court conduct an *in camera* review of all of the documents at issue, the court finds that determination of the pending motion would not be advanced by an *in camera* review.

[8] In both of these documents, there are three redacted blocks - two of which Plaintiffs are challenging.

information." Smith Declaration ¶ 20.  The documents before the court do not provide sufficient information to allow the court to determine which information was redacted by BOP and which information was redacted by the FBI.

Second, Defendants represented at oral argument that BOP did not assert deliberative process privilege over the redactions at issue, but rather, the FBI asserted it over the recommendations of its task force.  Defendants noted that BOP could have asserted deliberative process privilege over the CTU staffs' recommendations, with the exception of the Regional Director's final decision, but that BOP decided not to do so.  In light of this representation, the Defendants' position is unclear regarding several of the redactions in BPO CMU 5014, which appear to redact recommendations of several BOP CTU staff members, including the Correctional Programs Administrator, Psychology Services Administrator, Correctional Services Administrator, Executive Assistant, and the Senior Deputy Regional Director.  The descriptions provided in the Clancy Declaration and the amended privilege log do not clarify why the FBI asserted privilege over the redacted information.  *See* Swinton Declaration, Exhibit 1 at 41.

Given the lack of a sufficient explanation as to why the information in these two documents – 5014 and 5019 – falls within the scope of either of the asserted privileges, the court will order Defendants to provide a supplemental explanation as to the basis for asserting the privilege, or submit the two documents for an *in camera* review to assess whether non-privileged information was improperly redacted.

Further, Defendants have not asserted any privilege over the information in the second block of redacted test in BOP CMU 5021 (the first redaction identified by the Plaintiffs).  *See* Clancy Declaration ¶ 5.  Defendants have also not asserted that the redacted information is CIM

information.  *See* Smith Declaration ¶ 20.  Accordingly, the court will not include this redaction

in its discussion of the privileges below.  Defendants will be ordered to disclose the redacted

information in the second block of redacted text in BOP CMU 5021.

As to the remaining redactions, the court finds that Defendants have met the initial

requirements for invoking their claim of privilege.  *See In re Sealed Case*, 856 F.2d 268, 271

(D.C. Cir. 1988).  Michael Clancy made a formal claim of the privileges on behalf of the FBI.

Clancy Declaration ¶ 5.[9]  Mr. Clancy reviewed the documents that privileges were claimed over.

*Id.* ¶ 6.  Finally, Mr. Clancy specified the documents which were redacted based on privilege, *id.*

¶ 5, and in the *ex parte*, *in camera* submission, provided explanations as to why the information

fell within the scope of the privileges.

### Law Enforcement Privilege

The NJTTF occasionally recommends that an inmate be designated in a CMU when an

inmate is under investigation for "suspected terrorism-related activity" or is connected to such an

investigation.  Clancy Declaration ¶ 13.  Defendants maintain that disclosure of the redacted

information would reveal who has been subject to FBI surveillance, *id.* ¶ 14, and allow

individuals to "reflect back on the time period," *id.* ¶ 16.  Defendants argue that the inmates

"could potentially learn the identities of informants, witnesses, and undercover law enforcement

personnel" if they reconstruct the information.  *Id.* ¶ 17.

The court agrees that disclosure of the identities of informants or witnesses would have

---

[9] Although Defendants have not established that Michael Clancy is the "head of the department," the court
is satisfied that his role as Deputy Assistant Director of the FBI Counterterrorism Division's Operations Branch II is
of "sufficient rank to achieve the necessary deliberateness in assertion" of the privileges.  *See Landry v. FDIC*, 204
F.3d 1125, 1135-36 (D.C. Cir. 2000) (advising that it is "counterproductive to read 'head of the department' in the
narrowest possible way").

serious consequences, and those consequences would weigh in favor of Defendants'

withholding.   Defendants have not, however, sufficiently demonstrated that disclosure of the

NJTTF's recommendation to BOP regarding Plaintiffs' designations would reveal this type of

information.   Defendants suggest that by learning "specific time period[s]" of investigation,

Plaintiffs can "reconstruct" this information by "identify[ing] any particular communications or

conduct" and thereby learn the identities of informants, witnesses, and undercover law

enforcement personnel.  *Id.* ¶¶ 16-17.   Neither this limited information provided in the

declaration, nor the limited information provided in the amended privilege log, *see, e.g.*, Swinton

Declaration, Exhibit 1 at 38 (describing that "disclosure would further cause harm to, impede,

impair, or hinder an investigative interest"), supports such a finding.

    The redacted information is a mix of evaluative and factual data, reflecting both the

agency's recommendation as to the Plaintiffs' CMU designation, as well as information

regarding the status of FBI investigations.   *See* Clancy Declaration ¶ 13.   Because NJTTF

generally recommends a CMU designation when an inmate is under investigation or is connected

to an investigation, *see id.*, the factual data is intertwined with the evaluative data.  *See In re*

*Micron Tech., Inc. Sec. Litig.*, 264 F.R.D. 7, 11 (D.D.C. 2010) (finding that prepared summaries

of interviews could reveal the "evaluative process" and what the investigators found to be

significant).

    Plaintiffs argue that "there is no ongoing criminal investigation that would be

compromised."  Plaintiffs' Memorandum at 6.  Defendants counter that even if an investigation

is closed, disclosure could still be harmful as this information could encourage individuals to

engage in terrorism-related activity with a reduced fear.  Clancy Declaration ¶ 15.  The court

finds that although there may be no ongoing criminal investigations, Defendants have

demonstrated that disclosure could still harm future investigations.  *See Black v. Sheraton Corp.*

*of Am.*, 564 F.2d 531, 546 (D.C. Cir. 1977) (rejecting the argument that there was no public

interest in non-disclosure where the investigation at issue had concluded ten years prior and

noting that "the ability of any investigatory body to conduct future investigations would be

seriously impaired").

　　　As Plaintiffs noted, the remaining claims have survived a motion to dismiss.  Plaintiffs

allege that there is "no substitute" for these documents that memorialize the reasons for

Plaintiffs' CMU designations and it is "precisely this decision-making process" that they are

challenging.  Plaintiffs' Memorandum at 6.  Given the nature of the information sought, the court

agrees that Plaintiffs would be unlikely to obtain the information sought from other sources.

While the court acknowledges that the redacted portions may be important to Plaintiffs'

challenges to their designation and retention in the CMUs, the redactions at issue are "a small

minority of the information contained in these documents." *See* Opposition at 17.

　　　Based on consideration of the factors[10] enumerated above, the court finds that Defendants

have not met their burden of proving that the interest in non-disclosure outweighs the Plaintiffs'

interest in disclosure.  As Defendants have also asserted the deliberative process privilege over

the challenged redactions, however, this does not end the court's inquiry.

### *Deliberative Process Privilege*

Defendants maintain that with the exception of the CIM-related redactions, the redactions

---

[10] The court notes that the parties did not discuss factor three or factor seven.

at issue "concern communications between representatives on the National Joint Terrorism Task

Force and BOP officials at the CTU[,]" *see* Opposition at 9, that occurred prior to BOP making a

final determination regarding the inmates' CMU placements, *see* Clancy Declaration ¶ 20.

Plaintiffs counter, however, that some of the documents lost their predecisional status because

"at least some of [the recommendations] were ultimately adopted."  Reply at 5.   With regard to

the CTU referral forms, the documents do reflect a final decision.  *See* Smith Declaration ¶¶ 6, 8

(stating that the Regional Director is the "BOP official responsible for deciding whether CMU

placement is appropriate" and noting that the "Regional Director's decision in favor of or against

a CMU designation and the reasons supporting the decision are [] included in the NCRO

Referral Form"); *cf. Colo. Wild Horses & Burro Coal., Inc. v. Kempthorne*, 571 F. Supp. 2d 71,

76 (D.D.C. 2008) (finding that documents were properly withheld under the deliberative process

privilege where none of them stated the agency's final position).   Thus, the NCRO Regional

Director's ultimate designation decision was not properly withheld under this privilege.

Plaintiffs further argue that other redactions are improper because they withhold "purely

factual" information.  Reply at 5.  Defendants state that the there is a "strong correlation"

between the factual information concerning the status of an investigation and the NJTTF

recommendation regarding designation.  Opposition at 12.  The court agrees that in the context

of the deliberative process, as described in the Smith Declaration, the factual information

regarding whether the inmates were being investigated is "inextricably intertwined" with the

deliberative material, the recommendation regarding CMU designation.  Because the material is

intertwined, revealing the factual information would permit "inquiry into the mental processes of

the [decisionmaker] by revealing what materials he considered significant in reaching a proper

decision, and how he evaluated those materials." *See Playboy Enters., Inc. v. Dep't of Justice*, 677 F.2d 931, 935-36 (D.C. Cir. 1982) (distinguishing between cases where the factual information was included simply to inform and cases where the factual information was included for the purpose of assisting the decisionmaker in reaching a decision).

Having found that the Defendant properly asserted the deliberative process over most of the redactions at issue, the court will balance the interests of the parties to determine if the privilege can be qualified by "a sufficient showing of need." *See In re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1997). As previously noted, the redacted deliberations are a small subset of the information that was disclosed regarding Plaintiffs' designation processes. Defendants, on the other hand, have sufficiently demonstrated that disclosure would harm their process by chilling deliberations between NJTTF and BOP. *See* Clancy Declaration ¶ 22 ("[NJTTF] might elect to provide BOP with more limited information, might cease communications altogether, or might restrict BOP or other agency official's access to FBI information."). This could hamper the quality of the deliberations. *See id.* ¶ 24 (noting that NJTTF might omit certain reasons from their recommendations). Further, as discussed above in the context of the law enforcement privilege, disclosure of this information could disclose sensitive information regarding law enforcement investigations.

Accordingly, the undersigned finds that Defendants properly invoked the deliberative process privilege over the redactions challenged by the Plaintiffs in: BOP CMU 005006, BOP CMU 005007, BOP CMU 005008, BOP CMU 00510, BOP CMU 005011, BOP CMU 005012, BOP CMU 005013, BOP CMU 005014, BOP CMU 005018, BOP CMU 005021 (third redaction), BOP CMU 005031. The court finds that Defendants did not properly withhold

information in BOP CMU 005015 under the deliberative process privilege because the redacted

information is the Regional Director's final decision.

### *Central Inmate Monitoring System Information*

BOP maintains a Central Inmate Monitoring system to separate certain inmates from

other inmates, for safety and security reasons.  Smith Declaration ¶ 19.  This status is not a basis

for an inmate's CMU designation.  *Id.* ¶ 19 n.6.  Plaintiffs do not object to redactions disclosing

these security level designations since Defendants have indicated that these designations had no

role in Plaintiffs' CMU designations.  Agathocleous Declaration ¶ 3.

Defendants have asserted that the information redacted from BOP CMU 3791, BOP

CMU 3792, BOP CMU 5019, and BOP CMU 5026 is "entirely CIMs-related information."

Smith Declaration ¶ 20.  Initially, Plaintiffs objected to the redactions in documents 3791 and

3792.  *See* Plaintiffs' Memorandum at 3.  In their reply, however, Plaintiffs also challenge the

redacted portions in BOP CMU 5019 and 5026.  *See* Reply at 2.

As to BOP CMU 3791 and 3792, Plaintiffs argue that because the documents discuss

Plaintiff McGowan's associations with "The Family," the redactions "could be hiding the

reasons for his CMU commitment."  Plaintiff's Memorandum at 3.  Plaintiffs further argue, in

challenging all four documents, that the relative size and the context of the redactions

demonstrate that the redactions "shield much more than CIM and STG designations."  Reply at

2.  As Defendants point out, however, the subject line of 3971 and 3792 indicate that they are

documents from a memorandum concerning CIM separations for members of "The Family."

Opposition at 8.

Defendants contend that the challenged redacted text in BOP 5026 is a "reference to

separation of McGowan from another BOP inmate . . . ."  Swinton Declaration Exhibit 1 at 45.

Plaintiffs, in challenging the redaction, have only argued that the size of the redacted text

indicates that the information includes "much more than CIM and STG designations."  Reply at

2.

       With regard to BOP CMU 3791, 3792, and 5026, the court finds Plaintiffs' allegations

too speculative to support a challenge to the redactions.  Accordingly, Plaintiffs' motion to

compel is denied as to these redactions.  As to BOP CMU 5019, the court has discussed the

discrepancy between Defendants' assertions above.

## II.  Withheld Documents

       Because Plaintiff has only claimed that the documents sought are relevant to the second

prong of the procedural due process inquiry – whether Defendants deprived Plaintiffs of their

liberty interest without constitutionally adequate procedure – the court has limited its discussion

to this argument.  *See* Reply at 8 n.3.  The undersigned finds that information regarding the

process afforded to CMU designees is relevant, under the discovery standard, to Plaintiffs'

procedural due process claim.

       The court previously set forth the legal standard for the Plaintiffs' procedural due process

claim:

> To establish an actionable due process claim, the plaintiffs must show that (1) they
> have a constitutionally-protected life, liberty or property interest and (2) the
> defendants deprived the plaintiffs of that interest without constitutionally adequate
> procedure. *See Propert v. Dist. of Columbia*, 948 F.2d 1327, 1331 (D.C. Cir. 1991);
> *Soeken v. Herman*, 35 F. Supp. 2d 99, 104-105 (D.D.C. 1999).  Once a liberty
> interest is implicated, a "fundamental requirement" of due process is that an
> individual receive "the opportunity to be heard at a meaningful time and in a
> meaningful manner."  *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976); *see also*
> *Propert*, 948 F.2d at 1331.  In determining whether "an appropriate hearing has been

provided at a meaningful time and in a meaningful matter," the court considers three
factors: [f]irst, the private interest that will be affected by the official action; second,
the risk of an erroneous deprivation of such interest through the procedures used, and the
probable value, if any, of additional or substitute procedural safeguards; and
finally, the Government's interest, including the function involved and the fiscal and
administrative burdens that the additional or substitute procedural requirements
would entail. *Mathews*, 424 U.S. at 335. All the while, the court must remain
mindful that "due process is flexible and calls for such procedural protections as the
particular situation demands." *Mathews*, 424 U.S. at 334 (citing *Morrissey v.
Brewer*, 408 U.S. 471, 481 (1972)).

Memorandum Opinion at 22-23.

In assessing the second factor, "procedural due process rules are shaped by the risk of

error inherent in the [] process as applied to the generality of cases, not the rare exceptions."

*Mathews*, 424 U.S. at 344; *see also Walters v. National Ass'n of Radiation Survivors*, 473 U.S.

305, 321 (1985) (reiterating that the "fundamental fairness of a particular procedure does not

turn on the result obtained in any individual case").  "These questions are to be asked not merely

with reference to a single case, but having in mind the type of case it is, with regard to the run of

such cases.  A record bearing on the characteristics of the category of such cases may, therefore,

be necessary."  *Rafeedie v. INS*, 880 F.2d 506, 524 (D.C. Cir. 1989) (citations omitted).

As the court previously discussed in the context of the present claim:

"To insure that [a] review does not become simply a sham, the content and substance
of that review must be scrutinized under the illumination" of the Fifth Amendment,
*Mims v. Shapp*, 744 F.2d 946, 954 (3d Cir. 1984), and "prison officials must be
prepared to offer evidence that the . . .  reviews held are substantive and legitimate,
not merely a sham," *Giano v. Kelly*, 869 F. Supp. 143, 150 (W.D.N.Y. 1994).

Memorandum Opinion at 26.

Although Defendants characterize Plaintiffs' claim as solely a challenge to their own

reviews, *see* Opposition at 23-24, the undersigned finds that the court's ruling as to Defendants'

motion to dismiss does not support this characterization.  In finding that the Plaintiffs plausibly

alleged that the Defendants violated their procedural due process rights, the court provided the

following summary of the Plaintiffs' allegations:

> The plaintiffs allege that administrative remedies and periodic reviews are "illusory,"
> and that the Notices of Transfer are "so vague and generic" that they effectively
> provide no notice at all.  The plaintiffs allege that the administrative and periodic
> review process is insufficient because those procedures involve review at the
> institutional or regional level, but the decisions for CMU designation are only made
> by officials in Washington, D.C. . . . .  In light of the plaintiffs factual allegations
> supporting their contention that reviews provided by the defendants are "illusory"
> and meaningless, the court determines that they have adequately alleged there is a
> high risk that the procedures used by the defendants have resulted in erroneous
> deprivations of their liberty interests.

Memorandum Opinion at 26-27 (citations omitted).

The undersigned does not read this characterization of the Plaintiffs' allegations to limit

the challenge solely to the procedure as applied to Plaintiffs.  Four other inmates filed a Motion

to Intervene (Document No. 9), which the court denied after finding that the "current plaintiffs

adequately represent the interests of the applicants."  Memorandum Opinion at 2.  The court

quoted the Plaintiffs assertion that "they have and will adequately represent the applicants'

interests, as well as the interests of all the inmates currently designated to the two CMUs."  *Id.* at

36.

Defendants rely on *Hewitt v. Helms*, 459 U.S. 460 (1983), *Mims v. Shapp*, 744 F.2d 946

(3d Cir. 1984), *Wilkinson v. Austin*, 545 U.S. 209 (2005), and *Hatch v. Dist. of Columbia*, 184

F.3d 846, 856 (D.C. Cir. 1999) to support their argument that the CMU referral documents are

not relevant to assessing the adequacy of the procedures afforded to Plaintiffs.  The court is

persuaded by Plaintiffs' argument, however, that these cases evaluated specific features of

procedures afforded, rather than the "broader commitment process."  *See* Reply at 9.  Further, the

court notes that under the standard governing discovery, "[r]elevant information need not be

admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of

admissible evidence." Fed. R. Civ. P. Rule 26(b)(1).  Thus, evaluating what evidence courts

relied on in reaching the merits of a due process claim is not necessarily conclusive in

determining the present matter.

        At the discovery stage, this comparative information is "reasonably calculated to lead to

discovery of" evidence to challenge the procedures utilized by the Defendants.  In a similarly

situated case, an inmate at an Administrative Maximum Prison challenged his confinement,

alleging deprivation of his procedural due process.  *Rezaq v. Nalley*, 264 F.R.D. 653 (D. Colo.

2010).  The presiding United States Magistrate Judge, in considering the inmate's motion to

compel information regarding other prisoners with the same security threat designation, denied

the inmate's discovery request after finding that the "precise information sought" would not

"illuminate" whether the plaintiff's confinement was warranted nor illustrate the "conditions of

similarly-designated prisoners' confinements."  *Id.* at 657-58 (assessing the relevancy of the

information as to the first prong of the legal inquiry - whether plaintiff had established a liberty

interest).  The court, however, suggested that the information could have been meaningful to the

plaintiff's claim if used to inquire into "information relating to [comparators'] conditions of

confinement."  *Id.* at 658.

        Accordingly, the court finds that the referral and review forms for non-plaintiff, CMU

prisoners are relevant in assessing whether the procedures utilized by Defendants are

constitutionally adequate.  Even when the information sought is relevant, however, the court has

discretion to weigh the burden and benefit of disclosure.  *See* Fed. R. Civ. P. 26(b)(2)(C).

        With regard to the scope of the request, the court acknowledges that Plaintiffs ultimately

narrowed their initial request.  *See* Agathocleous Declaration ¶¶ 10, 14.   The documents

requested are described with particularity – "CMU referral and review forms" for all current and

former CMU inmates.  *Id.* ¶ 14.  The breadth of documents requested is also relatively limited, as

"[t]here are 162 former or current BOP inmates who are currently or have been housed in a

CMU."  Smith Declaration ¶ 11.

On the other hand, the court finds that the documents sought include sensitive

information, disclosure of which could threaten "the safety of inmates and BOP staff, the

security of BOP's institutions, ongoing law enforcement investigations, and BOP's ability to

receive information and candid input from other governmental agencies regarding the

appropriateness of a CMU designation."  Smith Declaration ¶ 10.  Counsel for Plaintiffs have

attempted to mitigate these risks by consenting to redaction of inmate names and BOP numbers,

and agreeing to an "Attorneys' Eyes Only" designation.  Pursuant to the protective order

governing the use and disclosure of documents in this matter, Defendants can mark documents

containing "protected information" as "Attorneys' Eyes Only."  *See* Order (Document No. 62).

Information under this designation "may not be disclosed to any of the Plaintiffs and shall only

be disclosed to Plaintiffs' counsel of record and the persons identified in paragraph 9."  *Id.* ¶ 8.

The court finds that redaction of names and BOP numbers alone would be insufficient,

given that the information sought could be "highly specific to individual inmates."  *See* Smith

Declaration ¶ 10.  However, Defendants have not offered a basis for the court to conclude that

the protective order governing discovery in this case is insufficient to mitigate their articulated

concerns.  At oral argument, counsel for Defendants maintained that the designation was

insufficient because the information includes very sensitive information, including information

regarding the investigation and recommendations of the FBI.  Defendants have represented that

they will require "a careful and lengthy privilege review" that could take many months.  Smith

Declaration ¶ 17.  While fact discovery was scheduled to be completed by July 30, 2012,

Plaintiffs have recently filed a First Amended Complaint (Document No. 86).  Accordingly,

having weighed the burden and benefit of producing the documents at issue, the court grants

Plaintiffs' motion to compel Defendants to produce these documents.  Documents shall be

designated as "Attorneys' Eyes Only" pursuant to the Protective Order (Document No. 62).


**CONCLUSION**

For the foregoing reasons, it is, this 26th day of November, 2012,

**ORDERED** that Plaintiffs' Motion to Compel Defendants to Remove Redactions,

Produce Documents, and to File an Exhibit to a Supporting Declaration Under Seal (Document

No. 65) is **GRANTED IN PART**, and that by no later than December 4, 2012, Defendants shall

(1) produce the redacted information in the second block of redacted text, the first

redaction identified by Plaintiffs, in BOP CMU 005021;

(3) produce the information redacted in BOP CMU 005015; and

(4) produce referral and review forms for non-plaintiff, CMU prisoners; and it is

**FURTHER ORDERED** that by no later than December 4, 2012, Defendants shall file a

supplemental declaration articulating the basis for their redaction of BOP CMU 5014 and BOP

CMU 5019, or submit the two documents for *in camera* review; consideration of Plaintiffs'

motion to compel as to BOP CMU 5014 and BOP CMU 5019 is **STAYED** pending this court's

review of said supplemental declaration; and it is

**FURTHER ORDERED** that the disclosures ordered on this date shall be designated as

"Attorneys' Eyes Only" pursuant to the Protective Order (Document No. 62) governing this

case; and it is

      **FURTHER ORDERED** that in all other respects, Plaintiffs' motion to compel is

**DENIED**.

_____/s/_____
DEBORAH. A. ROBINSON
United States Magistrate Judge
