IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Yassin Muhiddin AREF, et al., | ) |
| Plaintiffs, | ) |
| -v- | ) Case No. 1:10-cv-00539-BJR |
| Jefferson Beauregard SESSIONS III, et al., | ) |
| Defendants. | ) |

**JOINT STATUS UPDATE**

In its April 30, 2018 Minute Order, the Court ordered the parties to file a joint status report by May 11, 2018, updating the Court on the status of the Plaintiffs and indicating whether additional briefing is required before the Court addresses the remaining issues on remand. The parties have met and conferred, but have been unable to come to an agreement as to how to proceed. Plaintiffs' position is that additional briefing is not necessary, while the Government believes that it is. Below, the parties provide a brief overview of the procedural posture of the case, note the issuance of a final CMU rule, discuss the status of the Plaintiffs and set forth their respective positions on the need for additional briefing.

In 2016, the Court of Appeals held that Plaintiffs have a liberty interest in avoiding CMU placement, and remanded to this Court "to determine whether appellants were afforded sufficient process" based on the record developed before this Court at summary judgment. *Aref v. Lynch,* 833 F.3d 242, 246, 258 (D.C. Cir. 2016). At the time the parties briefed summary judgment before Your Honor, the Bureau of Prisons had proposed but not

yet finalized a rule governing CMU placement and review. That final rule was published after briefing was complete, one month before Your Honor ruled on summary judgment. *See* 28 C.F.R. § 540.200 *et seq*; *Aref,* 833 F.3d at 247 n.1 (noting "both CMUs were opened before BOP established any written designation criteria. In April 2010, BOP published a proposed rule for public notice-and-comment. *See* 80 Fed. Reg. 3168 (Jan. 22, 2015). The final rule entered into effect on February 23, 2015, almost a decade after the first CMU opened.").

As to the current status of the Plaintiffs, Kifah Jayyousi was released from Bureau of Prisons custody on September 15, 2017. The parties disagree as to whether this renders Mr. Jayyousi's claim moot, and set out their individual positions below. Yassin Aref remains in custody, and is scheduled to be released from Bureau of Prisons custody in October of 2018. The parties also dispute whether Aref's procedural due process claim is still live in light of the issuance and implementation of the CMU Final Rule in 2013.

**Defendants' Position**

This case is now in a significantly different posture from the time the parties briefed summary judgment in 2012 given Jayyousi's release from BOP custody and the promulgation and implementation of a formal legislative CMU rule setting forth new CMU procedures that post-date the record compiled by the parties on summary judgment. As set forth below, the Government believes that, in light of these changes, supplemental briefing addressing the Court's jurisdiction and the merits of the case is necessary and would be helpful to the Court. The Government intends in this supplemental briefing to provide an overview of how the CMU rule is *currently* being implemented — information that was not

2

presented or ruled upon by the D.C. Circuit.  Since Plaintiffs have made clear that they intend to challenge the manner in which BOP has implemented its CMU procedures, basic information that bears directly on this issue should be presented to the Court.   The Government is prepared to file such a brief within one month of any order from this Court.

With respect to jurisdiction, the Government's position is that the claims of Jayyousi and Aref are no longer live based on the aforementioned developments.  Jayyousi completed his term of imprisonment and was released from BOP custody on September 15, 2017.  This Court has previously determined that the official-capacity claims of former Plaintiffs Twitty and McGowan became moot once they were released from BOP custody.  Mem. Op. at 4, ECF No. 161.  Consistent with these prior determinations, the Government's position is that Jayyousi's release from BOP custody likewise renders his case moot.  Jayyousi disputes that his claim is moot, and therefore the Government will be required to file a motion to dismiss Jayyousi from the case.  This motion will address Plaintiffs' mistaken claim that Jayyousi's claim is live based on a supposed interest in expunging information in his BOP file.

Aref was designated to a CMU in May 2007, and was released from the CMU in April 2011.  Mem. Op., at 3, ECF No. 161.  He is projected to be released from BOP custody, via good time credit, on October 3, 2018, less than five months from now.  The Government's position is that Aref's procedural due process claim is no longer live given the issuance of the CMU Final Rule in March 2013 as well as the significant differences in the manner in which the Final Rule is being implemented as compared to BOP's procedures at the time of Aref's designation in 2007.

The Government is mindful that this Court has previously determined that, applying the voluntary cessation exception to mootness, the Government failed to demonstrate that Aref would not be redesignated to a CMU in the future. Mem. Op. at 7, ECF No. 161; *see also Aref v. Lynch,* 833 F.3d 242, 251 (D.C. Cir. 2016) (agreeing with court's mootness analysis). However, the Government's current arguments do not focus on the *likelihood* of Aref being redesignated to a CMU, but rather the *certainty* that, in the event he were redesignated, it would be under procedures that are different from those that were in place prior to the issuance of the new CMU Final Rule. For instance, the CMU Final Rule transfers decision-making authority from the Regional Director of the North-Central Region to a higher-ranked official, the Assistant Director of the Correctional Programs Division in Washington, D.C. 28 C.F.R. § 540.202(b). Yet Plaintiffs' evidence developed on summary judgment focuses entirely on how the Regional Director decided to transfer Plaintiffs to a CMU many years before the new rule was implemented. *See* Plaintiffs' Mem. of Law. in Support of Pls. Mot. for Summ. J. at 31-42, ECF No. 138.

The Final Rule, which has the force and effect of law, requires that an inmate receive notice of the reasons for his transfer and requires BOP to regularly review an inmate's placement in the CMU. *See* 28 C.F.R. §540.202(c). In addition, the inmate may challenge the CMU designation decision, and any aspect of confinement therein, through the Bureau's administrative remedy program. *Id*. Given these requirements, Aref cannot show a "certainly impending" risk of irreparable injury that these facially valid procedures will be applied to him in an unconstitutional manner in the unlikely event that he is redesignated to a CMU. *See Clapper v. Amnesty Internat'l USA*, 133 S. Ct. 1138, 1147

(2013) (no standing unless injury is "certainly impending"). He thus lacks standing to seek injunctive relief.

His claim is also not ripe. Ripeness turns on "[1] the fitness of the issues of judicial decision and [2] the hardship to the parties of withholding court consideration." *Conservation Force, Inc. v. Jewell*, 733 F.3d 1200, 1206 (D.C. Cir. 2013). There is no prejudice to Aref from this court deciding not to reach the constitutionality of BOP's current procedures, particularly where Aref only has five months left on his sentence. Moreover, until BOP's new procedures are actually applied to him, the Court would be asked to opine as to the constitutionality of those procedures in a factual vacuum. A case is not fit for decision where resolution may "prove unnecessary" or in which "the court's deliberations might benefit from letting the question arise in some more concrete form." *Cronin v. FAA*, 73 F.3d 1126, 1131 (D.C. Cir. 1996). The record at present is devoid of *any* information as to how the Assistant Director is currently implementing the Final CMU Rule, which the Government would address in a supplemental filing. For instance, while Plaintiffs previously complained that the Regional Director in some cases did not memorialize his reasons for transferring an inmate to a CMU, the Assistant Director now uses a form in which he sets forth his reasons for ordering the transfer of an inmate to the CMU in all cases. This is just one example of how the issuance of the CMU Final Rule and its implementation will impact this Court's analysis both with respect to jurisdiction and the merits of the case. While the D.C. Circuit opined in a footnote that the procedures set forth in the CMU Final Rule "remain essentially the same," *see Aref,* 833 F.3d at 247 n.2, the D.C. Circuit did not have any evidence before it as to how the Final Rule was being

implemented, and thus was not in a position to adequately compare BOP's former CMU regime with its current one.

For all these reasons, the Government believes that supplemental briefing addressing the standing, mootness and ripeness of plaintiffs' claims, and the impact of the current CMU procedures on the merits of those claims, is both necessary and would be helpful to the Court. The Government is prepared to file an initial brief to which Plaintiffs could respond within one month of any order from this Court. The Government would also be pleased to attend a status conference to discuss these issues should that be helpful to the Court.[1]

### Plaintiffs' Position

Eighteen months after this case was remanded by the Court of Appeals for a determination of whether the Bureau of Prisons violated Plaintiffs' rights, Defendants seek additional briefing regarding Mr. Aref's claim. Their request must be denied for three reasons: (1) it is 18 months late; (2) a different version of their argument was already presented to the Court of Appeals and rejected; and (3) it would require reopening discovery.

Defendants also request supplemental briefing on whether Mr. Jayyousi's claim is moot given his release from Bureau of Prison's custody. Mr. Jayyousi's claim is not moot, because prospective relief—in the form of expungement—is still possible.

---

[1] The Government disagrees with Plaintiffs' position below that it has "withheld" information about the Final Rule. Indeed, the existence of the Final Rule was addressed in the Government's appellate brief and discussed by the D.C. Circuit. *See Aref,* 833 F.3d at 247 n.2. The Government's position is simply that if Plaintiffs seek to bring a challenge to BOP's current procedures, then the Court should be provided with information as to how those procedures are currently being implemented. The Government anticipates at most submitting a short declaration and providing the forms presently used to designate and review inmate placement as part of its supplemental filing.

1. <u>The Status of Mr. Aref's Claim</u>

Defendants do not argue that anything about Mr. Aref's status has changed since the Court of Appeals ruled that he is entitled to a determination as to whether the Bureau of Prisons used constitutionally inadequate procedures when designating him to the CMU. Rather, Defendants seek supplemental briefing regarding the impact of a rule that was promulgated *in 2015,* and un-tested facts about how that rule is currently being implemented. This request must be denied.

First, the request is 18 months late. When the Mandate issued from the Court of Appeals in 2016, the Government could have requested supplemental briefing, or sought to reopen to discovery. It did neither. Indeed, the BOP's rule was promulgated *before* Your Honor ruled on Summary Judgment. *See Aref,* 833 F.3d at 247 n.1 (noting the final CMU rule entered into effect on February 23, 2015); Memorandum Opinion, ECF No. 161 (Mar. 16, 2015). In the weeks between the issuance of the rule and Your Honor's decision, the Government failed to notify the Court of the rule, request additional briefing or request discovery on its impact. The Government cannot sit on information for years, and then seek to submit it at the eleventh hour, months before the final Plaintiff is due to be released.

Moreover, supplemental briefing is unnecessary, as the Court of Appeals already rejected the arguments Defendants seek to make, and defined the question on remand in a way that renders new evidence irrelevant. Defendants argued on appeal that Plaintiffs' transfers from the CMU *and the existence of the new rule* rendered Plaintiffs' claims moot, because the rule addressed Plaintiffs' procedural complaints. Brief for Official-Capacity Appellees and on Behalf of the United States as Amicus Curiae, ("Appellees' Br."), No. 15-5154, (D.C. Cir.), Doc. #1595149 at 17-19. The Court of Appeals rejected this

argument, holding that Plaintiffs' claims are not moot, and ordering this court "to determine *whether appellants were afforded sufficient process*." *Aref,* 833 F.3d at 246 (emphasis added). The Court of Appeals did not find Defendants' arguments about the impact of the new rule convincing. Indeed, it noted that besides identifying a new decision-maker, under the new rule the CMU "process . . . has remained essentially the same." *Id.* at 247 n.2. That decision in binding on the Court.

Finally, there is yet another reason to reject Defendants' request for supplemental briefing: it presumes that the Government should be allowed to present one-sided factual material years after the close of discovery. As we argued to the Court of Appeals, the new rule does not address the procedural deficiencies evidenced in Plaintiffs' motion. *See* Brief for Plaintiffs-Appellants, 15-5154, (D.C. Cir.), Doc. #1580576 at 4 n.2, 7, 7 n.3, 8, 11. For example, Plaintiffs amassed considerable evidence showing that the Regional Director failed to document his reason(s) for designating a prisoner to the CMU; the new rule includes no requirement that the decision-maker document the reasons(s) for her decision. 28 C.F.R. § 540.202(b). Defendants implicitly concede this, as they do not merely seek to alert the Court to the existence of the new rule, but also to provide information about how that rule is being implemented, for example, that the current CMU decision-maker documents his reasons for sending a prisoner to the CMU placement. But this is the Government's version of the facts, and it cannot be taken as true without Plaintiffs being given an opportunity for discovery. However, fact discovery closed in January of 2014. *See* ECF Nos. 129, 130; Minute Order, Jan. 16, 2014.

Happily, reopening discovery at this late date is not necessary. Even if the Bureau of Prisons could prove that it has begun implementing its rule in a way that satisfies *some*

of Plaintiffs' complaints, nothing prevents the Bureau from returning to its old practices—as the rule itself does not specify that the Assistant Director use any particular form, or write anything down. It has always been Bureau "policy" to provide prisoners with the reason for their transfer; we proved that in practice they consistently failed to provide the *actual reason*, in part because the decision-maker never bothered to write that reason down. If the Bureau has recently fixed this problem (and we have no *evidence* they have), that's commendable, but without meeting their "'heavy' burden of showing it is '*absolutely clear*' that the allegedly wrongful behavior could not reasonably be expected to recur," their voluntary cessation does not render Plaintiffs' claim moot. *Aref,* 833 F.3d at 251.

The Court of Appeals made it clear that Plaintiffs are entitled to a determination as to whether the procedures used to send them to the CMU—procedures than have not been corrected by the new rule, and that have resulted in erroneous information about Plaintiffs that remains in BOP records to this day—violate the Constitution. No new information is needed to decide this issue. Moreover, it would be a patent injustice were Plaintiffs made to wait longer for this decision, when Defendants sat on the possibility of supplementing the record for the past 18 months.

*   *   *

Before turning to Mr. Jayyousi's status, Plaintiffs take this opportunity to acknowledge that if Mr. Aref is released before the Court rules on the summary judgment motion, the question of mootness may need to be briefed. Alternatively, or in addition, Plaintiffs could seek leave to amend the complaint to add new plaintiffs who remain in BOP custody. While this long-running case is not a class action, the Court has previously acknowledged the quasi-representational nature of Plaintiffs' claims and counsel's

arguments. *See Aref v. Holder*, 774 F. Supp. 2d 147, 172 (D.D.C. 2011) ("*Aref* I") (denying motion for intervention by other CMU prisoners, because plaintiffs would adequately represent their interests). Indeed, Plaintiffs raised the possibility of adding new plaintiffs long ago, in response to one of Defendants' prior attempts to have the case dismissed as moot:

> Plaintiffs' counsel puts the Court and Defendants on notice that there are additional individuals currently incarcerated in both the Marion and Terre Haute CMUs, who were designated to those CMUs for alleged reasons similar and/or identical to Plaintiffs, including other CMU prisoners who were not convicted of crimes related to terrorism. These individuals have expressed interest in joining in this litigation. If appropriate, Plaintiffs may seek leave in the future to amend the complaint to add those individuals.

Pltfs. Mem. of Points and Authorities in Opp. to Defs.' Supp. Mot. to Dismiss, Nov. 23, 2010, ECF No. 30 at 13 n.4. Plaintiffs do not relish the idea of a motion to amend so many years into the case, but nearly a decade worth of work by the parties and the court should not go to waste without a determination as to whether CMU procedures violate the Constitution.

2. The Status of Mr. Jayyousi's Claim

Defendants also seek supplemental briefing on the question of whether Mr. Jayyousi's claim has been mooted by his release from BOP custody. Their request is eight months overdue, as Mr. Jayyousi was released from BOP custody in September of 2017. Regardless supplemental briefing is not necessary.

Mr. Jayyousi's claim is not moot because erroneous information about him has not been expunged from BOP files. "A case is not moot when there is some possible remedy, even a partial remedy or one not requested by the plaintiff." *Rezaq v. Nalley*, 677 F.3d 1001, 1010 (10th Cir. 2012) (citing *Church of Scientology of Cal. v. United States*, 506 U.S.

9, 12-13 (1992)). As the Court of Appeals noted, Plaintiffs "challenged BOP's reliance on flawed information used to justify their CMU designations, which remains in their prison files." *Aref*, 833 F.3d at 251 (citing *Rezaq v. Nalley* for the proposition that a case is not moot if the BOP made decisions under old policies "that have ongoing, long-term consequences for the plaintiffs that could be mitigated by an award of prospective relief").

Meaningful prospective relief remains available to Plaintiffs, namely: expungement of the erroneous information created through the designation process, an injunction against future use of that information, and a declaration that Plaintiffs were designated to the CMU under constitutionally infirm procedures.[2] *See Dorn v. Michigan Dep't of Corr.,* No. 1:15-CV-359, 2017 WL 2436997, at *9 (W.D. Mich. June 6, 2017) ("Petitioners have offered no authority, nor can they, for the remarkable proposition that the request for expungement of respondent's record became moot upon his parole. Nor, since the expungement would have depended upon the finding that respondent's due process rights were violated, have they explained how the request for declaratory relief supposedly became moot"); *see also West v. Cunningham*, 456 F.2d 1264, 1265 (4th Cir. 1972); *Black v. Warden*, 467 F.2d 202, 204 (10th Cir. 1972).

Plaintiffs acknowledge that this Court previously ruled that the voluntary cessation exception to mootness could not save two prior plaintiffs' claims after their release from BOP custody. *See Aref* I, 774 F. Supp. 2d at 160-61 (rejecting applicability of voluntary cessation doctrine to Plaintiff Avon Twitty's release from CMU custody because Twitty

---

[2] Plaintiffs presented this argument to the Court of Appeals in response to Defendants' attempt to have their claims declared moot after their release from the CMU. The Court of Appeals held it need not decide the issue, as the proper analysis lay with the voluntary cessation exception to mootness, which Plaintiffs had urged in the alternative. *Aref*, 833 F.3d at 251.

had been approved for halfway house placement prior to the filing of the lawsuit and the exception only applies when voluntary cessation arises "*because of* the litigation"); *Aref v. Holder,* 953 F. Supp. 2d 133, 143-44 (D.D.C. 2013) ("*Aref* II") (applying same reasoning to find Daniel McGowan's claims moot).  However, it is not clear that this reasoning survives the Court of Appeals decision. *See Aref,* 833 F.3d at 251 n.6 ("We are unpersuaded by the government's argument that [plaintiffs] must prove their transfers were 'because of this litigation'"). But even if it does, Plaintiffs here do not seek to rely on the voluntary cessation exception to mootness, but rather on the continued viability of meaningful prospective relief.

We would be happy to attend a status conference to discuss these issues, if the Court would find it helpful, and hope that it could be scheduled as soon as possible. We also respectfully request that if the Court does order supplemental briefing on Mr. Jayyousi's claim, it not delay consideration of Mr. Aref's claim in the meantime.

Dated: May 10, 2018

                                        Respectfully submitted,

                                        */s/Rachel Meeropol*
                                        RACHEL MEEROPOL, *pro hac vice*
                                        PARDISS KEBRIAEI
                                        SHAYANA D. KADIDAL
                                        (D.C. Bar No. 454248)
                                        CENTER FOR
                                        CONSTITUTIONAL RIGHTS
                                        666 Broadway, 7th Floor
                                        New York, NY 10012
                                        Tel: (212) 614-6432
                                        Fax: (212) 614-6499
                                        rachelm@ccrjustice.org

                                        GREGORY SILBERT, *pro hac vice*
                                        LARA E. VEBLEN TRAGER, *pro hac vice*

EILEEN CITRON (D.C. Bar No. 995117)
WEIL, GOTSHAL & MANGES, LLP
767 Fifth Avenue
New York, NY 10153
Tel: (212) 310-1000
Fax: (212) 310-8007
gregory.silbert@weil.com

KENNETH A. KREUSCHER
Kenneth A. Kreuscher Law LLC
1130 SW Morrison Street, Suite 407
Portland, OR 97205
Tel: 971-303-9453
KennethKreuscher@gmail.com

*Attorneys for Plaintiffs*

CHAD A. READLER
Acting Assistant Attorney General

JONATHAN TYLER
Assistant Director

 /s/ *Nicholas Cartier*
NICHOLAS CARTIER
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave. NW
Washington, DC  20530
Tel:  (202) 616-8351
Fax:  (202) 616-8470
E-mail:  Nicholas.Cartier@usdoj.gov

*Counsel for Defendants*