IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| Yassin Muhiddin AREF, et al., | ) | |
| Plaintiffs, | ) ) ) | Case No. 1:10-cv-00539-BJR |
| -v- | ) ) | |
| William BARR, et al., | ) ) ) | |
| Defendants. | ) ) | |

**DEFENDANTS' MOTION TO DISMISS**

Pursuant to Federal Rule of Civil Procedure 12(b)(1), Defendants move to dismiss the remaining claim in this case: an alleged violation of procedural due process brought by plaintiffs Yassin Aref and Kifah Jayyousi. This claim is moot in light of plaintiffs' release from prison. While plaintiffs seek the expungement of Bureau of Prison ("BOP") records concerning their past placement in a Communications Management Unit ("CMU"), this does not create a live, ongoing controversy because they lack standing to pursue this remedy. Moreover, plaintiffs do not satisfy the requirements for expungement because they have offered no evidence that they are, or will be, adversely affected by records concerning their prior CMU placement. Accordingly, the court should dismiss the case.

**BACKGROUND**

Aref and Jayyousi allege that their prior placement in a CMU over ten years ago violated their rights to due process.[1] Am. Compl, First Cause of Action, ECF No. 86. However, both men were released from the CMU in 2011 and 2013, respectively, Defendants' Statement of

---

[1] Defendants continue to strenuously maintain that the procedures afforded to the plaintiffs complied with all applicable procedural due process requirements. *See, e.g.*, Defendants' Motion for Summary Judgment ("Defs MSJ") at 27-34, ECF No. 145.

Material Facts ("Defs' SMF") ¶¶ 178, 192, ECF No. 145-1, and have now been released from BOP custody and placed on supervised release. *See* Declaration of Jon Gustin ¶ 3, ECF No. 183-1 (stating that, "[o]n September 15, 2017, inmate Jayyousi completed his term of imprisonment via Good Conduct Time"); Declaration of Sean L. Miles ¶ 4, ECF No. 180-1 (stating that "inmate Aref was released from BOP custody on October 3, 2018, via Good Conduct Time").

At the February 14, 2019 hearing in this case, plaintiffs' counsel indicated that Jayyousi may file a motion to reduce his period of supervised release, although apparently this has not yet occurred. As for Aref, who is from Iraq, it is Defendants' understanding that he is currently in the middle of deportation proceedings conducted by Immigration and Customs Enforcement ("ICE"). *See* Declaration of Heather Sposato ("Sposato Decl.") ¶¶ 3-5, ECF No. 183-2. Neither plaintiff has alleged how he is harmed or will be harmed by BOP records concerning his prior CMU placement.

## ARGUMENT

### I.    Plaintiffs' Due Process Claim Is Moot

Because plaintiffs have been released from prison, their official-capacity due process claim is moot.[2]  As the D.C. Circuit has explained, "[n]ormally, a prisoner's transfer or release from a prison moots any claim he might have for equitable relief arising out of the conditions of his confinement in that prison." *Scott v. Dist. of Columbia*, 139 F.3d 940, 941 (D.C. Cir. 1998); *see also Dorman v. Thornburgh*, 955 F.2d 57, 58 (D.C. Cir. 1992) (per curiam) (same); *Cameron v. Thornburgh*, 983 F.2d 253, 254-57 (D.C. Cir. 1993) (same). This court previously determined that the official-capacity claims of then-plaintiff Daniel McGowan became moot once he was released from BOP custody. *Aref v. Holder*, 953 F. Supp. 2d 133, 143-144 (D.D.C. 2013). The

---

[2] Plaintiffs have previously acknowledged that "if Mr. Aref is released before the Court rules on the summary motion, the question of mootness may need to be briefed." Joint Status Update at 9, ECF No. 173.

court stated that "Judge Urbina previously ruled that Plaintiff Twitty's equitable claims became moot when he was placed in a halfway house and subsequently paroled[,]" and that "[t]he same logic applies to McGowan's official-capacity claims. Under the law of the case doctrine, 'the same issue presented a second time in the same case in the same court should lead to the same result[.]'" *Id.* (citing *Kimberlin v. Quinlan*, 199 F.3d 496, 500 (D.C. Cir. 1999). "While on supervision by the U.S. Probation Office, McGowan is beyond the reach of the BOP and is several meaningful steps away from being returned to the restrictions of the CMU. Likewise, there is no allegation that McGowan was released because of this litigation, and so the 'voluntary cessation exception' is similarly inapplicable."[3] *Id.* at 144. As a result, the court dismissed McGowan's claims for equitable relief as moot. *Id.*

Notwithstanding the court's prior determination that a plaintiff's release from BOP custody moots all official-capacity claims brought by that plaintiff,[4] Aref and Jayyousi contend that their procedural due process claim is not moot because they have sought to expunge all references in BOP's records to their prior CMU placement. Am. Compl. ¶ 12, ECF No. 86 ("Plaintiffs also seek to have their prison records expunged of any mention of the CMU."); Joint Status Update at 6, ECF No. 173 ("Mr. Jayyousi's claim is not moot, because prospective relief — in the form of expungement — is still possible"). Yet McGowan sought the same relief of expungement in the Amended Complaint and the court found that his official-capacity claims

---

[3] The voluntary cessation exception to mootness clearly has no application to Aref and Jayyousi now that they have been released from BOP custody. Joint Status Update at 12 (plaintiffs state that they "do not seek to rely on the voluntary cessation exception to mootness").

[4] In light of the decision not to appeal this court's dismissal of McGowan's official-capacity claims, the D.C. Circuit stated that "[t]he parties agree McGowan's official-capacity claims are mooted by his full release from BOP custody." *Aref v. Lynch*, 833 F.3d 242, 250 (D.C. Cir. 2016).

3

were moot.  *Aref I*, 953 F. Supp. 2d at 144.  There is no justification here for reaching a contrary, anomalous result for Aref and Jayyousi.

Under Article III of the Constitution, federal courts "may only adjudicate actual, ongoing controversies." *Abdelfattah v. U.S. Dep't of Homeland Sec.*, 787 F.3d 524, 534 (D.C. Cir. 2015) (citation omitted).  A case is moot when "events have so transpired that [a judicial decision] will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future." *Id*.  That is the case here.  Given plaintiffs' release from BOP custody, a declaratory judgment stating that plaintiffs' past placement in a CMU was unlawful would amount to an improper advisory opinion and not "affect the parties' rights." *Id; see also NBC-USA Housing, Inc., Twenty-Six v. Donovan*, 674 F.3d 869, 873 (D.C. Cir. 2012) (stating that a declaratory judgment is moot where it "can no longer affect the behavior of the defendant towards the plaintiff, and thus affords the plaintiffs no relief whatsoever") (citations omitted).  Similarly, plaintiffs' request for injunctive relief —either release from the CMU or additional process, *see* Am. Compl., Prayer for Relief— is clearly moot given Plaintiffs' release from BOP custody.  *Schmidt v. United States*, No. 13-5007, 2014 WL 1643743, at *3 (D.C. Cir. April 25, 2014) (case becomes moot when a "court can provide no effective remedy because a party has already obtained all the relief that it has sought") (citation omitted).  And Plaintiffs do not and will not suffer any injury due to the existence of BOP records regarding their CMU placement.  As explained below, this means that Plaintiffs both lack standing to seek the remedy of expungement and that this remedy would not have a "more-than-speculative chance of affecting them in the future," rendering the case moot.  *Abdelfattah*, 787 F.3d at 534.

### A. Aref and Jayyousi Lack Standing To Seek The Remedy of Expungement.

While it is true that expungement of government records may be an available remedy under certain circumstances to remedy a constitutional violation, *see, e.g.*, *Abdelfattah*, 787 F.3d at 534, plaintiffs' lack standing to seek this relief. *Friends of the Earth, Inc. v. Laidlaw Envtl, Servs. Inc.* (*TOC*), 528 U.S. 167, 185 (2000) ("plaintiff must demonstrate standing separately for each form of relief sought"); *Los Angeles v. Lyons,* 461 U.S. 95, 109 (1983) (notwithstanding the fact that plaintiff had standing to pursue damages, he lacked standing to pursue injunctive relief). The three familiar elements to establish standing are: (1) the plaintiff must have suffered an "injury in fact . . . which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical''; (2), "the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court[,]" and, (3), must be "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (citations omitted).

In their original Complaint, plaintiffs did not request expungement at all, and in their Amended Complaint, the request for expungement was made in passing in a single introductory paragraph, but was not included in their prayer for relief. *See* Am. Compl. ¶ 12; *id.*, Prayer for Relief. The Amended Complaint fails to adequately allege that Aref and Jayyousi were experiencing any ongoing injury due to the existence of BOP records concerning their CMU placement. Nor does the Amended Complaint contain allegations that would support the conclusion that these records pose an "imminent" risk of future harm. *Lujan*, 504 U.S. at 560 ("speculative" future injury is inadequate to establish standing; plaintiff must allege that any future injury is "imminent").

At summary judgment, plaintiffs contended that their past designations to a CMU as well as allegedly erroneous information in their Notices of Transfer might support a future designation. While the Government disputed these allegations, *see* Defendants' Reply in Support of Motion for Summary Judgment at 6-7, ECF No. 157, speculation that information in Aref's and Jayyousi's Notice of Transfer might make it more likely that they would be returned to the CMU clearly does not establish a "certainly impending" risk of future injury required to demonstrate standing. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (alleged injury must be "certainly impending" to support standing).

Nor is there any evidence that plaintiffs are currently suffering or will suffer injury due to the BOP records in question given their release from BOP custody. While plaintiffs' counsel indicated at the February 14, 2019 hearing that Jayyousi may file a motion to reduce the term of his supervised release, pursuant to BOP's regulations, the documents that "should be forwarded to the proposed district of [an inmate's] supervision" are the inmate's "Final Progress Report," "sentence monitoring computation data," "Supervision Release Plan," "Judgment and Commitment Order," and "Presentence Report." *See* Program Statement 5321.08 (Unit Management Manual) at 6.[5] Thus, there is no reason to believe that Jayyousi's Notice of Transfer, which he contends does not accurately characterize his Presentence Report, *see* ECF No. 138-1 at 27, would even be before the supervising court. Moreover, it is pure conjecture that Jayyousi's Notice of Transfer would have *any* impact on the supervising court's analysis of whether Jayyousi, who was convicted of terrorism-related offenses, should have his period of supervised release shortened.

---

[5] https://www.bop.gov/policy/progstat/5321.08.pdf

As for Aref, it is the Defendants' understanding that he is under a detainer from ICE and is currently involved in deportation proceedings. *See* Sposato Decl. ¶¶ 3-5. According to the Declaration of Heather Sposato, a Case Management Coordinator at BOP, it appears that BOP has not provided ICE with Aref's Notice of Transfer, which he also contends mischaracterizes his Presentence Report.[6] *Id.* ¶ 5. But in any event, there is no reason to believe that Aref's Notice would have any adverse impact on him during his deportation proceedings. Aref has been convicted of terrorism-related offenses and it strains credulity to believe that his prior CMU placement would play any meaningful role in these proceedings.

Under these circumstances, plaintiffs' lack standing and their request for expungement must be dismissed. *Friends of the Earth*, 528 U.S. at 185 (explaining that plaintiff must demonstrate standing separately for each form of relief sought).

### B. An Order of Expungement Would Not Provide Meaningful Relief Because Plaintiffs Are Not Harmed By the BOP Records They Seek To Expunge.

For similar reasons, under binding D.C. Circuit precedent, the case is moot because the court is unable to provide any meaningful relief to the plaintiffs in the absence of any evidence that they will be harmed by the BOP records at issue. *See Abdelfattah*, 787 F.3d at 534 (noting a case is moot where a "decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future"). In *Anyanwutaku v. Moore*, the plaintiff brought a due process challenge arising out of BOP's allegedly erroneous calculation of his parole eligibility date and sought the correction of his records. 151 F.3d 1053, 1057 (D.C. Cir. 1998). Once he was released from prison, the D.C. Circuit held that his due process claim and

---

[6] Aref has alleged that his Notice of Transfer mischaracterizes his Presentence Report because it states that he communicated with "Jaish-e-Mohammed [JeM,]," a foreign terrorist organization, instead of stating that he communicated with an undercover informant he *believed* was a member of JeM. ECF No. 138-1 at 27. There is no reasonable basis to believe that this distinction has any relevance to Aref's deportation proceedings.

his request to correct his records was moot because he failed to allege "continuing adverse consequences from the challenged parole records." *Id*.; *cf. Hedgepeth v. Washington Metropolitan Area Transit Authority*, 386 F.3d 1148, 1152 (D.C. Cir. 2004) (equitable claim seeking as a remedy expungement of 12-year-old's arrest records was not moot, even though the policy responsible for her arrest was no longer in effect, because the arrest records posed a clear risk of adversely impacting her future employment prospects).

In the habeas context, the Supreme Court has held that a due process challenge to a plaintiff's parole revocation, where that prisoner was subsequently released from prison and then re-incarcerated, was moot even though state law *required* the prior parole revocation to be considered in determining plaintiff's eligibility for parole in the future. *Spencer v. Kenma*, 523 U.S. 1, 14 (1998). The Supreme Court found that plaintiff's concern that the parole revocation could be used in a future parole proceeding to deny parole was a "possibility rather than a certainty or even a probability[,]" and given that the parole authority retained "almost unlimited discretion" to grant parole, the case was moot. *Id*. (citation omitted). Here, the supervising court is not even *required* to consider Jayyousi's prior CMU placement and retains discretion to reduce his period of supervised release.

In sum, given plaintiffs' release from BOP custody and the fact that plaintiffs' request for expungement is not justiciable, their due process claim is moot and should be dismissed.[7]

## II. Even If Plaintiffs' Due Process Claim Is Not Moot, They Have Not Alleged Or Provided Evidence Establishing An Entitlement To The Remedy of Expungement.

---

[7] Even without reaching a determination that the case is moot under Article III, the court could dismiss under the doctrine of prudential mootness. *See MBIA Ins. Corp. v. FDIC,* 708 F.3d 234, 245 (D.C. Cir. 2013) ("Where it is so unlikely that the court's grant of [remedy] will actually relieve the injury, the doctrine of prudential mootness permits the court in its discretion to stay its hand, and to withhold relief it has the power to grant by dismissing the claim for lack of subject matter jurisdiction.") (citation omitted).

In the alternative, if the court determines that plaintiffs' claim for expungement is justiciable and that their due process claim is not moot, it should nevertheless find that plaintiffs have no equitable entitlement to expungement under the facts of the case and dismiss on that basis. The D.C. Circuit has explained that expungement of government records is an equitable remedy that may be available under certain circumstances to vindicate constitutional and statutory rights where the records may "adversely" impact an individual. *Chastain v. Kelley*, 510 F.2d 1232, 1236 (D.C. Cir. 1975) (right to expungement may exist for a party that will be "adversely affected by the information [in the government's records] in the future").

In *Chastain*, the D.C. Circuit addressed a lawsuit brought by an FBI Special Agent, who, although not authorized to do so by an official investigation, entered a man's house, brandished his FBI credentials and interrogated the man in an attempt to determine whether the man was harassing his female neighbor. 510 F.2d at 1234-35. Based on the results of the FBI's investigation into the Special Agent's conduct, the agent was suspended without pay and the record of his misconduct was preserved in the FBI's files. The government contended the case was moot because the agent was ultimately reinstated with back pay. *Id*. at 1235. The court of appeals disagreed because "[t]here may remain a right not to be adversely affected by the information [in the FBI's files] in the future[,]" which "may exist if the information (1) is inaccurate, (2) was acquired by fatally flawed procedures, or (3) as may be the case with information about his private and personal relationships, is prejudicial without serving any proper purpose . . . ." *Id*. at 1236; *see also Abdelfattah*, 787 F.3d at 537 (reciting these factors from *Chastain* and stating that *Chastain* "establishes a modest proposition: expungement of government records . . . may be available under certain circumstances to vindicate constitutional

9

and statutory rights"); *id*. at 535 n. 6 (plaintiff may possess "a legally cognizable right to the expungement of prejudicial records that do not serve a proper governmental purpose").

If the FBI agent in *Chastain* were able to establish on remand that he would be "adversely affected by the information in the future[,]" *Chastain*, 510 F.2d at 1236 — a showing that plaintiffs cannot make here, *see infra* — the trial court would then have to balance the harm to plaintiff against the interests of the FBI in maintaining information about the apparent misconduct of one of its agents. *Id*. ("Moreover, the Bureau would appear to have a strong interest in retaining at least some of the information that the District Court ordered expunged," and noting the "considerable latitude given the Bureau in its internal affairs").

Unlike the investigative file containing derogatory information about the FBI agent in *Chastain* that could impact his prospects for advancement at the Bureau, there is no evidence here or even any allegations that plaintiffs will be adversely affected by information about their CMU placement now that they have been released from prison.  While Jayyousi may seek to reduce his period of supervised release, as noted above, BOP policy sets forth the documents that are to be provided to the district of Jayyousi's supervision, which do not include his Notice of Transfer, which he contends mischaracterizes his Presentence Report.  ECF No. 138-1 at 27.  In contrast, his Presentence Report *will* be provided to the supervising court, so there are no concerns that the supervising court will not understand its contents.  *See* Program Statement 5321.08 (Unit Management Manual) at 6 (requiring that Presentence Report be provided to an inmate's proposed district of supervision).  Moreover, there is no reason to believe that Jayyousi's Notice of Transfer would impact the supervising court's analysis of whether to reduce his period of supervised release, especially given that Jayyousi was *convicted* of terrorism-related offenses.  In the absence of any evidence that BOP's records will adversely impact the

terms of his parole, and given the supervising court's discretion to reduce his period of supervised release, there are simply no grounds to expunge here. *See Anyanwutaku,* 151 F.3d at 1057 (noting a challenge to correction of BOP parole records moot where plaintiff could not explain how information would harm him); *Spencer*, 523 U.S. at 14 (fact that parole revocation could be used in a future parole proceeding to deny parole was a "possibility rather than a certainty or even a probability," and because the parole authority retained "unlimited discretion" to grant parole, the case was moot).

As for Aref, it is virtually inconceivable that records concerning his CMU placement would have any impact on his deportation proceedings given his conviction for serious terrorism-related offenses. Furthermore, it appears that no such records have been provided to ICE. Sposato Decl. ¶¶ 3-5.

In short, the record is devoid of *any* evidence that plaintiffs are harmed by the existence of their CMU records in BOP's files. To the extent plaintiffs may argue that this information may be used to support a future designation to the CMU in the event they are returned to prison, it is well-established that courts will assume that a plaintiff will obey the law and, consequently, speculative harms resulting from future confinement will not prevent a case from being moot.[8] *See United States. v. Sanchez-Gomez,* 138 S. Ct. 1532 (2018) ("[W]e have consistently refused to 'conclude that the case-or-controversy requirement is satisfied by' the possibility that a party 'will be prosecuted for violating valid criminal laws' . . . [and] have instead 'assume[d] that [litigants] will conduct their activities within the law and so avoid prosecution and conviction as well as exposure to the challenged course of conduct.'" (quoting *O'Shea v. Littleton*, 414 U.S. 488, 497) (1974)); *Spencer*, 523 U.S. at 15 (reasoning that a claim regarding a parole revocation

---

[8] Defendants have previously explained that Plaintiffs past placement to a CMU, without new evidence, would not support their redesignation to the CMU. *See* Defs.' Reply at 5-7.

11

order was moot following release from custody because any continuing consequences of the order were "contingent upon [the claimant] violating the law, getting caught, and being convicted"); *Lane v. Williams*, 455 U.S. 624, 632–633, n. 13 (1982) (concluding that case was moot where the challenged parole revocation could not "affect a subsequent parole determination unless respondents again violate state law, are returned to prison, and become eligible for parole"). Accordingly, plaintiffs have no entitlement to expungement.

## CONCLUSION

In sum, plaintiffs lacks standing to seek expungement nor can they establish an entitlement to expungement. As a result, the case should be dismissed.

Dated: April 12, 2019

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

JOHN R. TYLER
Assistant Branch Director

 /s/ Nicholas Cartier
NICHOLAS CARTIER
(D.C. Bar # 495850)
U.S. Department of Justice
1100 L Street, N.W.
Washington, D.C. 20005
Telephone: (202) 616-8351
E-mail: nicholas.cartier@usdoj.gov

*Attorneys for the Defendants*