IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| Yassin Muhiddin AREF, et al., ) <br> ) <br> Plaintiffs, ) <br> ) <br> -v- ) <br> ) <br> William BARR, et al., ) <br> ) <br> Defendants. ) | Case No. 1:10-cv-00539-BJR |

## DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS

### INTRODUCTION

A case is moot where "events have so transpired that [a judicial decision] will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future." *See* Defendants' Motion to Dismiss ("MTD"), ECF No. 183, at 4 (citing *Abdelfattah v. U.S. Dep't of Homeland Sec.*, 787 F.3d 524, 534 (D.C. Cir. 2015) (citation omitted)). For these reasons, an inmate's release from prison generally moots all claims for equitable relief arising out of the inmate's former conditions of confinement. MTD at 2 (summarizing case law to this effect). While Aref and Jayyousi are correct that a plaintiff may seek expungement of information as a remedy for a constitutional violation under certain limited circumstances, *see, e.g.,* Plaintiffs' Opposition to Defendants' Motion to Dismiss ("Opp.") at 9, this requires that the plaintiff identify "continuing adverse consequences" from the information he seeks to expunge. MTD at 7-8 (discussing *Anyanwutaku v. Moore,* 151 F.3d 1053, 1057 (D.C. Cir. 1998)); Opp. at 9.

Here, Plaintiffs are unable to identify *any* present injury due to the retention of CMU-related information about them in BOP records, nor can they identify any non-speculative future

injury. Aref does not explain how he will be harmed in the future by the records he seeks to expunge, while Jayyousi speculates that the BOP records in question may harm his chances of receiving a reduced period of supervised release. Opp. at 12 (stating that Jayyousi's "plans to move for modification of his 20-year term of supervised release"). As explained below, it is exceedingly unlikely that *any* of the information about which Jayyousi complains will ever be provided to the court that will determine whether to modify his period of supervised release, making it clear that it is highly speculative that the information at issue here will impact his chances of having his period of supervised release shortened. Accordingly, as it did with former plaintiffs Avon Twitty and Daniel McGowan, this Court should dismiss Aref's and Jayyousi's equitable claims in light of their release from BOP custody.

## ARGUMENT

I. **THE BOP RECORDS AT ISSUE DO NOT PRESENTLY IMPACT THE PLAINTIFFS NOR IS THERE ANY NON-SPECULATIVE BASIS TO CONCLUDE THAT THEY WILL HARM THEM IN THE FUTURE.**

As set forth below, Aref and Jayyousi fail to demonstrate any current injury arising out of the records they seek to expunge, nor do they offer anything more than speculation as to how these records may adversely impact them in the future. As a result, the case is moot and Plaintiffs lack standing to seek the remedy of expungement. *See Abdelfattah*, 787 F.3d at 534 (request for expungement moot where it will not have a "more-than-speculative chance of affecting" the plaintiff in the future); Opp. at 9 (conceding standard); *see also Clapper v. Amnesty International USA*, 568 U.S. 398, 410 (2013) (plaintiffs "highly attenuated chain of possibilities" does not satisfy the standing "requirement that the threatened injury must be certainly impending").[1]

---

[1] Contrary to Plaintiffs' arguments, Defendants do not contend that Plaintiffs must *prove* that they will be harmed by the BOP records in question. *See* Opp. at 9. But they do have to explain,

### A. Aref Fails To Identify Any Injury Caused By The Retention of the BOP Records He Seeks To Expunge

Aref contends that "CMU-related information" in his prison file "continues to impact" him and "may cause further harm in the future" despite his release from prison. Opp. at 1-2. Aref offers nothing, however, to support this claim other than conjecture. He states that he has been held in immigration detention at York County Prison under lockdown, and speculates that this is the result of BOP sharing information about his prior CMU placement. Opp. at 15. But he offers *no evidence* that there is any connection between his current conditions of confinement and his past placement in a CMU. Aref was convicted of serious terrorism-related offenses, which would be an understandable basis for his present conditions of confinement. Defs.' SMF ¶ 163 (explaining that Aref served a fifteen-year sentence for money laundering, providing material support for terrorism, conspiracy, and making a false statement to the FBI); Am. Compl., ECF No. 86, ¶ 105 (same). Whatever the reasons for his current conditions of confinement, BOP does not believe, nor has Aref established, that they have anything to do with information about his prior CMU placement. *See* Declaration of Heather Sposato, ECF 183-2, ¶¶ 3-5 (stating that there are "no references to Aref's CMU placement at all in the documents provided to ICE").

Aref also states that, like Jayyousi, he "continues to suffer emotionally from his CMU designation," and that expungement would provide "closure on what was done to him and his family." Opp. at 16. A plaintiff's emotional desire for a court to reach a final decision on the merits of a claim does not establish an injury-in-fact for purposes of Article III. The Supreme

---

in a non-speculative way, how they will be injured by these records. And now that the parties have briefed summary judgment, "mere allegations" of harm are insufficient to establish an injury in fact, and instead the plaintiffs "must 'set forth' by affidavit or other evidence 'specific facts'" to support a claim of injury. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (citing Fed. R. Civ. Proc. 56(e)).

Court has "rejected all attempts to substitute abstract concern with a subject" for "the concrete injury required by Art. III," and has explained that this "rule is the same when the question is mootness and a litigant can assert no more than emotional involvement in what remains of the case." *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 410 n.2 (1980); *Ashcrotf v. Mattis*, 431 U.S. 171, 17 (1977) (same); *see also City of Los Angeles v. Lyons*, 461 U.S. 95, 107 n. 8 (1983) ("emotional consequences of a prior act simply are not a sufficient basis for an injunction absent a real and immediate threat of future injury by the defendant"); *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107 (1998) ("psychic satisfaction is not an acceptable Article III remedy because it does not redress a cognizable Article III injury").[2]

In short, Aref has not established that he continues to be negatively impacted by his CMU designation, nor does he offer any explanation as to how he will be harmed by BOP records in the future. As a result, he has failed to establish standing to seek the remedy of expungement, and his request for expungement is moot as it would not have any impact on him now or in the future. *See Abdelfattah,* 787 F.3d at 534 (case moot when "events have so transpired that [a judicial decision] will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future") (citation omitted); MTD at 5 (explaining that

---

[2] Plaintiffs (Opp. at 16) rely upon a district court decision from the Northern District of California, *Lira v. Cate*, 2009 WL 10677792, at *22 (N.D. Cal. Sept. 30, 2009), in support of their argument that an emotional desire for closure is sufficient to avoid a finding of mootness. In *Lira*, the district court noted that a "released inmate may avoid mootness if 'some concrete and continuing injury'—some 'collateral consequence' of his confinement—exists." *Id* (citing *Spencer v. Kenma*, 532 U.S. 1, 7 (1998)). In response to plaintiff's request to expunge prison records validating plaintiff as a member of a gang, the court noted that the records created a risk that he would be subject to "retaliatory gang violence," as had occurred during his incarceration. *Lira*, 2009 WL 10677792, at *22. *Id.* In addition, the court concluded that expungement would have a favorable impact on plaintiff's mental health, based on expert testimony in the record. *Id.* Here, Aref does not provide expert testimony, and, like any litigant, would simply like a decision on the merits of his claims. As seen above, that is not enough. *Geraghty*, 445 U.S. at 410 n.2; *Mattis*, 431 U.S. 17 (1977) (same); *see also City of Los Angeles v. Lyons*, 461 U.S. at 107 n.8.

plaintiff must have standing to seek each form of relief sought in complaint); *Lujan*, 504 U.S. at 560 (to support standing, injury-in-fact must be "concrete and particularized," and "actual or imminent," rather than merely "conjectural or hypothetical").

### B. Jayyousi Similarly Fails To Explain Why Expungement Would Provide Him Meaningful Relief.

Jayyousi is also unable to identify any current injury caused by the BOP records at issue. He contends that he continues to be treated as a "person of interest" by the FBI and speculates that this may be because of his prior CMU placement. Opp. at 12. But even if Jayyousi were correct that he is subject to ongoing FBI surveillance —and BOP is in no position to confirm nor deny this allegation — there is no reason to conclude that his past placement in a CMU years ago would have caused the FBI to designate him as a person of interest today. Instead, like Aref, Jayyousi was convicted of serious terrorism-related offenses, and it would seem reasonable given the severity of his past offense conduct that the FBI might want to speak with Jayyousi. Defs. SMJ ¶ 182 (Jayyousi convicted of conspiracy to murder, kidnap and maim in a foreign country, and conspiracy to provide material support to terrorism); Am. Compl. ¶ 179 (same). As with Aref, Jayyousi has not introduced any evidence that would plausibly establish a link between the existence of the BOP records at issue and any current injury. *See Lujan*, 504 U.S. at 560 (explaining that at summary judgment, "mere allegations" of harm are insufficient to establish an injury in fact, and instead a plaintiff "must 'set forth' by affidavit or other evidence 'specific facts'" to support a claim of injury) (citing Fed. R. Civ. Proc. 56(e)).

Jayyousi also states that he intends to file a motion to reduce his period of supervised release and speculates that information in BOP files about his past CMU placement might harm the chances that the supervising court will grant the motion. Opp. at 12. But the information Jayyousi complains about will not even be before the court, and, moreover, there is no reason to

5

believe that these records would negatively impact his chances of having his period of supervised release shortened.

In particular, Jayyousi contends that his Notice of Transfer and the referral memo from BOP's Counterterrorism Unit ("CTU") mischaracterize statements in his Presentence Investigation Report ("PSR") about his offense conduct. Opp. at 5. Defendants disagree, but as seen below, the supervising court will have access to Jayyousi's PSR and can judge its contents for itself. Jayyousi also charges that a CTU referral memo initially recommending against his release from the CMU in 2011 and the CTU's final redesignation memo in 2013 recommending in favor of his release contain erroneous information. Opp. at 5-6. BOP disputes that the statements in these CTU memoranda are erroneous, which contain the CTU's opinions and evaluations of Jayyousi's conduct. *See* March 22, 2011 CTU Referral Memo, ECF No. 138-30 at 20-23; April 22, 2013 CTU Redesignation Memo, ECF No. 138-30 at 71-73.

In any event, *none* of the documents Jayyousi complains about above have been provided to the supervising court, nor is there any reason to believe they will be. As Defendants explained in their opening brief, pursuant to BOP regulation, the documents that "should be forwarded to the proposed district of [an inmate's] supervision" are the inmate's "Final Progress Report," "sentence monitoring computation data," "Supervision Release Plan," "Judgment and Commitment Order," and "Presentence Report." MTD at 6 (citing Program Statement 5321.08 (Unit Management Manual) at 6). As a result, there is no reason to conclude that Jayyousi's Notice of Transfer or the CTU memoranda that he mistakenly contends contain inaccurate information will even be before the court.[3]

---

[3] Jayyousi states, without explanation, that "information about [his] CMU placement itself" could harm his prospects for a reduced period of supervised release. Opp. at 15. Jayyousi was sent to the CMU for terrorism-related offenses, which is one of the main grounds for designating

6

Furthermore, there is no reason to believe these records would negatively impact Jayyousi's chances of receiving a shortened period of supervised release in the exceedingly unlikely event the court were to become aware of them. Jayyousi's complaint about BOP's characterization of his PSR in his Notice of Transfer and CTU memoranda is a red herring given that BOP, pursuant to Program Statement 5321.08, will provide the supervising court with Jayyousi's actual PSR. MTD at 6. Moreover, the upshot of Jayyousi's CMU records is that he was placed in the CMU based on his offense conduct over a decade ago in June 2008, and then released in 2013 due to good behavior and was never returned. *See* Defs. SMF ¶¶ 183, 192; March 28, 2013 Memorandum from Unit Manager S. Cardona, ECF No. 138-30 at 69 (stating that unit team recommends in favor of releasing Jayyousi from the CMU because he has "maintained clear conduct" and "staff have noted no continuation of actions which precipitated his placement in the CMU since his arrival"); April 22, 2013 CTU Redesignation Memo, ECF No. 138-30 at 71 (concurring with recommendation). These materials seem, if anything, helpful to Jayyousi's contemplated motion that he no longer requires a long period of supervised release. Moreover, as noted, there is no reason to believe this information will ever be before the supervising court, *see supra* (discussing documents BOP must provide to supervising court pursuant to Program Statement 5321.08). BOP would only provide the documents pursuant to a direct request from the judge and it seems virtually inconceivable that the supervising court would request such records, showing just how speculative it is that the records in question will result in any future injury to Jayyousi.

Additionally, there is no dispute that the supervising court retains considerable discretion

---

an inmate to a CMU. Defs. SMF ¶¶ 96, 187 (undisputed). Therefore, under no circumstances would it be appropriate to expunge the mere reference to Jayyousi's placement in the CMU in BOP records, nor is there any reason why the mere fact of his placement in the CMU years ago would impact the court's decision whether to reduce his period of supervised release. *See infra*.

to reduce Jayyousi's period of supervised release.  Opp. at 12; *see also United States v. Harris*, 258 F. Supp. 3d 137, 145 (D.D.C. 2017) (explaining that district courts have "discretionary judgment to allocate supervision to those releasees who need it most") (quoting *Johnson v. United States*, 529 U.S. 694, 709 (2000)).  This is significant, as the Supreme Court has indicated in the habeas context that where a sentencing body retains discretion about what weight to give certain records, the records will not create a sufficient injury-in-fact for purposes of Article III. *Spencer v. Kenma*, 523 U.S. 1, 14 (1998) (plaintiff's concern that records concerning parole revocation could be used in a future parole proceeding to deny parole was a "possibility rather than a certainty or even a probability," and given that the parole authority retained "almost unlimited discretion" to grant parole, the case was moot).  Here, the supervising court is not even *required* to consider Jayyousi's prior CMU placement and retains discretion to reduce his period of supervised release.

      Jayyousi cites *United States v. Epps,* 707 F.3d 337, 345 (D.C. Cir. 2013), as supposedly holding that *Spencer* only applies to parole revocation proceedings, not motions to modify a period of supervised release.  Opp. at 17.  At issue in *Epps*, however, was a claim seeking to retroactively reduce the inmate's sentence.  *Epps*, 707 F.3d at 345.  The *Epps* court concluded that this claim was not moot despite plaintiff's release from custody because Epps was still under supervised release and "there seems to be a *very substantial likelihood* that a ruling that Epps' incarceration should have been shorter should influence the district court's readiness to reduce his term of supervised release." *Id*. (emphasis added).  *Epps* merely confirms what is lacking from Jayyousi's request for expungement.  Plaintiffs are also wrong that *In re Sealed Case* supports their position (Opp. at 13), as that case did nothing more than apply the teaching of *Epps*.  *See* 809 F.3d 672, 674-75 (D.C. Cir. 2016) (noting substantial likelihood that reduction in

sentence would lead the district court to reduce plaintiff's period of supervised release).

In sum, it is purely speculative that (i) the information that Jayyousi seeks to expunge from his Notice of Transfer and CTU memoranda will be before the supervising court, and (ii) that even if this information were provided to the court, that it would negatively impact Jayyousi's chances of receiving a reduced period of supervised release. This chain of attenuated circumstances is far too speculative to create a live controversy, and is distinguishable from *Abdelfattah*, *see* Opp. at 9, where the plaintiff had alleged that records in a terrorism database had subjected him to serious past injuries, and that without expungement it was likely these records would continue to subject him to harm in the future. *See Abdelfattah*, 787 F.3d at 529-31; *id*. at 534-35 (court noting plaintiff's argument that "the threat remains that the maintenance and use of [terrorism database] records will lead to future deprivation of his rights"). Given this past history, the D.C. Circuit found that Adbelfattah's request for expungement was sufficient to avoid a finding of mootness. *Id*. at 535; *cf. Hedgepeth v. Washington Metropolitan Area Transit Authority*, 386 F.3d 1148, 1152 (D.C. Cir. 2004) (equitable claim seeking as a remedy expungement of 12-year-old's arrest records was not moot because the arrest records posed a clear risk of adversely impacting her future employment prospects).[4]

---

[4] Plaintiffs cite to a handful of out-of-circuit decisions holding that an inmate's request for expungement may create a live controversy notwithstanding the plaintiff's transfer or release from prison. Opp. at 8, 10-12. But unlike the circumstances of this case, these decisions typically identified a concrete injury that an order of expungement would remedy. *See, e.g., Black v. Warden*, 467 F.2d 202, 204 (10th Cir. 1972) (disciplinary record that plaintiff sought expunged may be used against him in the future, including in computing good time credits); *Lira*, 2009 WL 10677792, at *22 (request to expunge prison records not moot where, among other things, records validated plaintiff as a member of a gang and created a risk that he would be subject to "retaliatory gang violence"); *Lazor v. Ingle*, 97 F. App'x 739, 740 (9th Cir. 2004) (expungement of recording concerning disciplinary violation "affected Lazor's parole determination in the past, and there is no showing that it will not be of consequence in the future"); *West v. Cunningham*, 456 F.2d 1264, 1265-66 (4th Cir. 1972) (request for expungement not moot because records at issue "could well prejudice [plaintiff's] future chances for pardon or

In contrast to *Abdelfattah*, Aref and Jayyousi are not able to identify *any* continuing adverse consequences stemming from the records they seek to expunge, and Jayyousi can point to nothing more than speculation and conjecture as to how these records might harm him in the future. *See Anyanwutaku,* 151 F.3d at 1057 (D.C. Circuit holding that request for expungement was moot because plaintiff failed to identify "continuing adverse consequences from the challenged parole records"); *Abdelfattah,* 787 F.3d at 534 (case moot when "events have so transpired that [a judicial decision] will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future"). Accordingly, their request for expungement is moot and their claims should be dismissed.[5]

---

parole"); *Del Raine v. Carlson*, 826 F.2d 698, 707 (7th Cir. 1987) (request for expungement not moot because disciplinary record could impact plaintiff's chances of being granted parole). In other instances, these out-of-circuit decisions did not apply the standards applicable in the D.C. Circuit and provided next to no analysis for their conclusion that a request for expungement created a live controversy.  For instance, in *Dorn v. Michigan Dep't of Corrections*, 2017 WL 2436997, at * 9 (W.D. Mich., June 6, 2017), the court simply cited language from a *dissent* in *Hewitt v. Helms*, 482 U.S. 755, 766 n.1 (1987), and held, without any explanation, that "Dorn has standing for his expungement request." *Id*.  In *Kerr v. Farrey*, 95 F.3d 472, 476 (7th Cir. 1996), the Seventh Circuit determined that the case was not moot in light of the plaintiff's request for expungement of prison records concerning his unwillingness to attend a Narcotics Anonymous program.  The court did not identify any concrete or particularized injury stemming from the records or address how expungement would provide a meaningful remedy.  *Id*.  Instead, the court merely noted that at oral argument counsel for the State had acknowledged plaintiff's allegations regarding expungement but "offered nothing in response to them in the record below," effectively conceding that the request for expungement was sufficient to avoid a finding of mootness.  *Id*; *see also Friedland v. Otero*, 2014 WL 1247992, at *15 (D. Conn March 25, 2014) (concluding that case was not moot because if Plaintiff prevailed on constitutional claim court might award relief in the form of expungement of disciplinary record, without explaining what injury this would remedy).  In sum, none of these cases alter the analysis here that expungement must have a "more-than-speculative" chance of remedying some concrete and particularized injury — a standard that Plaintiffs do not dispute.  Opp. at 9 (discussing *Abdelfattah*, 787 F.3d at 534).

[5] Even if the court finds that Plaintiffs' request for expungement is not moot, it should refuse to grant expungement on the facts of the case for the reasons set forth in Defendants' opening brief. MTD at 9-12, and dismiss on that alternative basis.

10

## **CONCLUSION**

For the reasons set forth above and in Defendants' Motion to Dismiss, the case should be dismissed.

Dated: May 31, 2019

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

JOHN R. TYLER
Assistant Branch Director

 /s/ Nicholas Cartier
NICHOLAS CARTIER
(D.C. Bar # 495850)
U.S. Department of Justice
1100 L Street, N.W.
Washington, D.C.  20005
Telephone: (202) 616-8351
E-mail: nicholas.cartier@usdoj.gov

*Attorneys for the Defendants*