UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

YASSIN MUHIDDIN AREF, *et al.*  )
                 *Plaintiffs,* )  Case No. 1:10-cv-00539-BJR
)
)  ORDER REGARDING MOTIONS TO
)  INTERVENE AND RELATED MOTIONS
WILLIAM BARR, *et al.* )
                 *Defendants,* )

## I.     INTRODUCTION

Nearly a decade ago, Kifah Jayyousi and seven other federal inmates initiated this action against the Bureau of Prisons ("BOP"), several BOP officials, and the Attorney General (collectively "Defendants"), alleging that their placement in a specially-designed Communication Management Unit ("CMU") within the federal prison violated their procedural due process rights. Since then, this matter has been through several rounds of dispositive motions, appealed to the D.C. Circuit Court, and remanded to this Court for further proceedings. Mr. Jayyousi is now the only remaining plaintiff in this action. *See* First. Am. Compl. ("FAC"), Dkt. No. 86.

Currently before the Court are four *pro se* motions to intervene brought by federal inmates Melvin Fagan, Donte R. Harris, Montgomery C. Akers, and Carlos Brutus ("Potential Intervenors"). *See* Fagen Mot. to Intervene ("MTI"), Dkt. No. 191; Harris MTI, Dkt. No. 192;

1

Akers MTI, Dkt. No. 193; Brutas MTI, Dkt. No. 196. Each seeks permissive intervention, while Mr. Akers, alone, also seeks to intervene as a matter of right. *See* Akers MTI at 1, ¶ 2. Having reviewed the motions, the opposition thereto, the record for the case, and the relevant legal authorities, the Court will deny the motions to intervene. The reasoning for the Court's decision follows.[1]

## II.   BACKGROUND

This matter has a long procedural history, most of which is not relevant to the current motions and will not be restated here.[2] Instead, it is sufficient to say that Mr. Jayyousi was an inmate at the FCI in Terre Haute, Indiana and at various times during his confinement, he was housed in the CMU. Mr. Jayyousi was placed in the CMU pursuant to BOP procedures that were in effect until February 23, 2015, at which point the procedures were modified. Mr. Jayyousi's procedural due process claim challenges his assignment to the CMU under the old procedures; it does not implicate the revised procedures. The parties have fully briefed Mr. Jayyousi's due process claim and the matter is finally—after nearly a decade—ripe for review.

The Potential Intervenors are current inmates serving a sentence of confinement at the federal BOP facility in Marion, Illinois and are or have been housed in the CMU at that facility. Each alleges that he was not afforded procedural due process before being placed in the CMU. *See* Dkt. No. 197. Defendants oppose the motions, arguing that the motions are "untimely, would interject new issues into the case, require additional factual development, and, as a consequence, delay the resolution of the parties' cross-motions for summary judgment." Defs.' Resp. to Putative

---

[1] On the same day Mr. Jayyousi filed his response with the Court, he moved for leave to file Exhibit A of his response under seal. *See* Pl.'s Mot. to Seal. The documents comprising Exhibit A were produced by Defendants pursuant to the "Attorneys Eyes Only" provision of the January 26, 2012 Protective Order agreed to by the parties. *See* Dkt. No. 62 at 5. Defendants do not object to the motion to seal. *See* Dkt. No. 198-1. As such, the Court grants this motion.

[2] For a complete recitation of the procedural and factual background of this case, *see* Court's order granting in part and denying in part Defendants' motion to dismiss, Dkt. No. 189.

Intervenors' MTIs ("Defs.' Resp.") at 1–2, Dkt. No. 199.

### III. MOTIONS TO INTERVENE

**A. Permissive Intervention**

The Potential Intervenors seek leave to intervene as plaintiffs in this action pursuant to Federal Rule 24. *See* FED. R. CIV. P. 24. They challenge their past and present placements in the CMU, implicating both BOP's former procedures for CMU designation (*i.e.* the procedures that Mr. Jayyousi challenges) *and* its current procedures that went into effect after February 23, 2015. *See* 28 C.F.R. 540.200 *et. seq*. Federal Rule of Civil Procedure 24(b) governs permissive intervention and provides that the Court "may permit" a party to intervene if that party "has a claim or defense that shares with the main action a common question of law or fact." FED. R. CIV. P. 24(b)(1)(B). Permissive intervention is an "'inherently discretionary enterprise,' and the Court enjoys considerable latitude under Rule 24(b)." *Sierra Club v. Van Antwerp*, 523 F. Supp. 2d 5, 10 (D.D.C. 2007) (quoting *EEOC v. Nat'l Children's Ctr., Inc.*, 146 F.3d 1042, 1046–48 (D.C. Cir. 1998)). In exercising this discretion, the Court weighs three factors set out in the Rule: (1) whether the motion to intervene is timely; (2) whether the applicant's claim shares a question of law or fact in common with the main action; and (3) whether intervention will unduly delay or prejudice adjudication of the original parties' rights. FED. R. CIV. P. 24(b); *Sierra Club v. McCarthy*, 308 F.R.D. 9, 11 (D.D.C. 2015); *In re Vitamins Antitrust Litig.*, 2001 WL 34088808, at *2 (D.D.C. Mar. 19, 2001).

Defendants argue that the Court should deny the motions to intervene because the intervenors failed to timely file their motions and do not provide good cause for their failure. Defendants also claim that the motions should be denied because the intervenors challenge to the adequacy of BOP's current procedures raises additional claims separate and distinct from Mr.

Jayyousi's challenge of BOP's past procedures.

Mr. Jayyousi does not object to the intervention motions to the extent that their approval does not cause delay in resolving the pending motion for summary judgment. He argues, however, that if allowed to intervene, their claims should be limited to BOP's past procedures and that the Potential Intervenors should not be allowed to challenge their recent CMU redesignations and continued placements because such claims raise different questions of law and fact than those of Mr. Jayyousi. Such claims, he argues, would require additional discovery and significantly delay the resolution of this case, including the pending summary judgement motions before the Court.

The Court finds that intervention is not appropriate at this point in the litigation. While the Potential Intervenors' claims involving their initial placements implicate common questions of law and fact to those of Mr. Jayyousi, their differences still predominate. These differences will unnecessarily complicate, confuse, and delay the case if the Court were to permit intervention. *See* FED. R. CIV. P. 24(b)(3) (allowing a court to deny permissive intervention if intervention would cause undue delay, complexity, or confusion in a case). As a general matter, BOP's determination of an inmate's CMU designation is a fact-intensive process. While it is true that the Potential Intervenors advance claims challenging their initial CMU placements under the BOP's old procedures, additional discovery regarding their designations to the CMU would nevertheless be necessary should the Court allow them to intervene. First, the parties will likely need to depose the Potential Intervenors and the relevant BOP personnel, as they did in Mr. Jayyousi's case, in order to determine how the old procedures were applied to each of them and whether BOP's application designating them to the CMU was in violation of their due process rights. Additional discovery would also be necessary to determine any factual differences between Mr. Jayyousi's initial CMU placement and each of the Potential Intervenors' original CMU designations. The parties would,

therefore, seek to obtain relevant BOP records involving the claimants' criminal histories and their current placements. As such, further factual development with respect to their claims will cause significant undue delay, dragging on the resolution of this decade long case.

Allowing the Potential Intervenors to intervene for the limited purpose of joining Mr. Jayyousi's pending motion for summary judgment would also add unnecessary complexity to the current case. As noted above, Mr. Jayyousi challenges the procedures used by BOP to designate him to the CMU in order to expunge the information created through this process. The Potential Intervenors allege that they are still suffering from the effects of their initial CMU placements determined under BOP's old procedures for CMU designation. They do not raise the issue of expungement. *See* Akers MTI at 2 (alleging he "was sent to the CMU and placed in this Unit for retaliatory purposes and with information . . . that was void of truth and validity as a rationale"); Fagan Mot. to Withdraw Unrelated Claims at 1 (contending "he continues to suffer from the initial transfer to the CMU"); Harris MTI at 8 (claiming he "is still having to suffer from the effects of initial placement in 2010"). Even if they had raised the subject of expungement, the issue is not yet ripe for this Court to decide, as the Potential Intervenors remain incarcerated unlike Mr. Jayyousi who is no longer in BOP custody. Because the issue of expungement is central to Mr. Jayyousi's remaining claim and not to the potential intervenors, intervention would complicate the resolution of this case and the remedial phase should the Court rule in his favor.

Lastly, Potential Intervenors present additional legal and factual questions that are not at issue in Mr. Jayyousi's case. While originally designated under the old procedures, the Potential Intervenors allege that they continue to suffer from the effects of their initial CMU designations under BOP's new procedures. *See* Harris MTI at 4 (alleging that "the original reasons for CMU placement are regurgitated at every team review" and are the "justification [used] to deny [a]

petitioner['s] discharge[] from the CMU"); Fagan Mot. to Withdraw Unrelated Claims at 1 (claiming "he continues to suffer from the initial transfer to the CMU"); Akers MTI at 2; 5 (arguing that "there is no rational or legitimate penological reasoning for . . . [his] continued placement in the CMU Unit to date" and challenging BOP's transfer procedures as he "has never been 'put in' for transfer from this unit in over (9) years").

While the Potential Intervenors attempt to limit their challenges to their initial CMU placements under the old rules to avoid raising new issues involved under the new BOP procedures, allowing them to intervene will, nonetheless, add unnecessary complexity to this case.[3] To determine the merits of these allegations, the Court would not only need to review the claims surrounding the initial CMU designations of these claimants but would also need to examine the history of their continued CMU placements and the transfer procedures used to reach these decisions and whether the alleged defects of their initial transfers have carried over to their current placements.[4] Therefore, their grievances are inextricably intertwined with BOP's current procedures and are different from those of Mr. Jayyousi's Complaint, which challenges only BOP's pre-existing rules for designating a prisoner to the CMU. *See* 28 C.F.R. 540.200 *et. seq.* Unlike the Potential Intervenors, Mr. Jayyousi alleges that, at the time of his designation in 2010, BOP created inaccurate and highly prejudicial documents to arbitrarily place him in the CMU and seeks injunctive relief in the form of expungement of any CMU-related documents. As such, the Court concludes that allowing the claimants to intervene will not only cause undue delay to this

---

[3] On March 30, 2020, Mr. Fagan filed a supplemental motion, seeking to withdraw any claims from his intervention motion that are unrelated to those challenging his initial 2011 CMU designation. The parties do not object to this motion. As such, the Court grants Mr. Fagan's motion to withdraw and considers only the claims related to Mr. Fagan's initial 2011 CMU placement.

[4] Mr. Fagan admits that his claim challenging his initial placement is central to the question of whether "he continues to suffer from . . . [his] initial transfer to the CMU." *See* Fagan Mot. to Withdraw Unrelated Claims at 1. As such, the Court cannot evaluate these claims separately.

6

decade long case but will add significant complexity by introducing entirely new issues to the current case. For the reasons above, the motions of Mr. Fagan, Mr. Harris, Mr. Akers, and Mr. Brutas for permissive intervention will be denied. *See also Securities & Exch. Comm'n v. Everest Mgmt. Corp.*, 475 F.2d 1236, 1240 (2d Cir. 1972) ("the complicating effect of the additional issues and the additional parties outweighs any advantage of a single disposition of the common issues.").

### B. Intervention as of Right

As stated above, Mr. Akers also seeks to intervene in this action as a matter of right. Federal Rule of Civil Procedure 24(a) sets forth the requirements for intervention as of right. *See* FED. R. CIV. P. 24(a); *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 731 (D.C. Cir. 2003). It provides that,

> [o]n timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

FED. R. CIV. P. 24(a)(2).

The D.C. Circuit has identified four prerequisites to intervene as of right: "(1) the application to intervene must be timely; (2) the applicant must demonstrate a legally protected interest in the action; (3) the action must threaten to impair that interest; and (4) no party to the action can be an adequate representative of the applicant's interests." *Deutsche Bank Nat'l Trust Co. v. FDIC*, 717 F.3d 189, 192 (D.C. Cir. 2013) (citing *Karsner v. Lothian*, 532 F.3d 876, 885 (D.C. Cir. 2008)).

Defendants argue that the Court should deny Mr. Akers' motion to intervene as of right because his motion is untimely and fails to provide any reasons why Mr. Jayyousi's counsel would not adequately be able to represent the interests he has in this case. *See* Defs.' Resp. at 6.

Mr. Akers argues that his motion is timely, alleging that BOP has "been involved in ongoing deprivation in . . . [his] ability to contact this Court to Intervene or prosecute . . . [his] claims with the aid of licensed counsel until now." Akers MTI at 5. He also alleges that "the existing Plaintiff's counsel have not adequately represented . . . [his] interests as a similarly situated [*sic*] person in the CMU". *Id.*

When determining timeliness, the Court "must weigh whether any delay in seeking intervention 'unfairly disadvantage[s] the original parties.'" *Roane v. Leonhart*, 741 F.3d 147, 151 (D.C. Cir. 2014) (quoting *Nat'l Res. Defs. Council v. Costle*, 561 F.2d 904, 908 (D.C. Cir. 1977)). Here, Mr. Akers filed his motion on December 26, 2019, seeking to intervene in proceedings that have been ongoing for over a decade. Mr. Akers claims his motion is timely because the BOP has impaired his "ability to contact this Court to Intervene." Akers MTI at 5. However, he fails to provide any evidence to support this assertion. As stated above, allowing Mr. Akers to intervene would necessitate additional discovery for new factual development, carrying substantial risk of disadvantaging the original parties by delaying the current proceedings. *See Roane*, 741 F.3d at 152. His motion is untimely.

As indicated, *supra*, one requisite for intervention as of right is that Mr. Akers have a legally protected interest that would be impaired if he were not allowed to intervene. *See* FED. R. CIV. P. 24(a)(2). Mr. Akers has not demonstrated such an interest. As discussed, *supra*, Mr. Akers does not share any common questions of law or fact with those of Mr. Jayyousi; and, thus, does not have any legally-protected interests here. The Court, therefore, concludes that its decision in the current action will not affect Mr. Akers' legally-protected interests and will not preclude him from separately challenging his initial CMU designation, determined under BOP's old procedures for CMU placement, and its effects on BOP's current CMU transfer decisions.

Therefore, the Court denies Mr. Akers' motion to intervene as a matter of right.

## IV. CONCLUSION

For the foregoing reasons, the Court rules as follows:

1. Potential Intervenor Melvin Fagan's Motion to Intervene [Dkt. No. 191] is DENIED;

2. Potential Intervenor Donte Rolando Harris's Motion to Intervene [Dkt. No. 192] is DENIED;

3. Potential Intervenor Montgomery Carl Akers' Motion to Intervene [Dkt. No. 193] is DENIED; having denied Mr. Akers' intervention motion, the Court hereby DENIES his Motion for Order to Show Cause and Temporary Injunction [Dkt. No. 208] as moot;

4. Potential Intervenor Carlos Brutus's Motion to Intervene [Dkt. No. 196] is DENIED;

5. Plaintiff Jayyousi's Motion for Leave to File Exhibit A Under Seal [Dkt. No. 198] is GRANTED;

6. Potential Intervenor Melvin Fagan's Motion to Withdraw Unrelated Claims [Dkt. No. 204] is GRANTED.

**IT IS SO ORDERED.**

DATED this 25th day of June, 2020.

BARBARA J. ROTHSTEIN
UNITED STATES DISTRICT JUDGE